WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
        and
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X

| | |
|---|---|
| IN RE PEAKTOP TECHNOLOGIES (USA), INC. SHAREHOLDER DERIVATIVE LITIGATION, <br><br> Plaintiffs, <br><br> v. <br><br> PEAKTOP INTERNATIONAL HOLDINGS LIMITED, et al., <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

Civil Action No. 06 CV 8228

Civil Action

**NOTICE OF MOTION**

---------------------------------------------------X

TO:    Sean F. Kane, Esq.
       Drakeford & Kane LLC
       475 Park Avenue South, 15th Floor
       New York, New York 10016

SIR:

PLEASE TAKE NOTICE that on December 14, 2006, at 5:00 p.m., or at such earlier or

later time as counsel may be heard, the undersigned attorneys for defendants shall move before

the Honorable Jed S. Rakoff, U.S.D.J., at the United States Courthouse at 500 Pearl Street,

Courtroom 1340, New York, New York for an Order pursuant to Rule 12 of the Federal Rules of

Civil Procedure, dismissing plaintiff's complaint in its entirety.

PLEASE TAKE FURTHER NOTICE that in support of this motion, defendants will rely upon their brief and the Declaration of James E. Tonrey, Jr., both of which are dated November 20, 2006 and being submitted herewith.

PLEASE TAKE FURTHER NOTICE that defendants hereby request oral argument, and that a proposed form of order is being submitted herewith.

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation


BY: s/Willard C. Shih
      WILLARD C. SHIH
      Attorneys for Defendants

Dated:  November 20, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 20, 2006, the within motion and all

supporting papers referenced therein were caused to be served upon counsel in this matter via

UPS Overnight Service and/or electronically filed at the addresses listed below:

> Sean F. Kane, Esq.
> Drakeford & Kane LLC
> 475 Park Avenue South, 15th Floor
> New York, New York 10016

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I may be subject to punishment.

JAMES E. TONREY, JR.

Dated:  November 20, 2006

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
        and
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

IN RE PEAKTOP TECHNOLOGIES (USA),
INC. SHAREHOLDER DERIVATIVE
LITIGATION,

                 Plaintiffs,

v.

PEAKTOP INTERNATIONAL HOLDINGS
LIMITED, et al.,

                 Defendants.

-------------------------------------------------------X

Civil Action No. 06 CV 8228

Civil Action

**DECLARATION OF
JAMES E. TONREY, JR.**

JAMES E. TONREY, JR., being duly sworn, deposes and says:

    1.     I am an attorney at law admitted to practice in the State of New York, and

counsel to the law firm of Wilentz, Goldman & Spitzer, a Professional Corporation, attorneys for

defendants in the above-captioned matter. I am submitting this declaration in support of

defendants' motion to dismiss the complaint.

#2825497

2.    Attached hereto as Exhibit A is a true and correct copy of the complaint that was filed on behalf of Peaktop Investment Holdings Limited in the above-captioned matter.

Dated:  November 20, 2006

JAMES E. TONREY, JR.

# Exhibit A

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
  and
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Plaintiff
  Peaktop Investment Holdings
  (B.V.I.) Limited

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------X

| | | |
|---|---|---|
| PEAKTOP INVESTMENT HOLDINGS (B.V.I.) LIMITED, | : | |
| | : | |
|    Plaintiffs, | : | Civil Action |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| GEOGLOBAL PARTNERS, LLC, JEFFREY ROBBINS, MARK WILSON, GREGORY SCHUTTE, PEAKTOP TECHNOLOGIES (USA), INC., and BEST EAGLE GROUP, LTD., | : | |
| | : | |
|    Defendants. | : | |

-----------------------------------------------------X

Plaintiffs Peaktop Investment Holdings (BVI) Limited ("Peaktop Holdings" or

"Peaktop") through its undersigned attorneys, as and for its complaint against defendants,

GeoGlobal Partners, LLC ("GeoGlobal"), Jeffrey Robbins, Mark Wilson, Gregory Schutte,

Peaktop Technologies (USA), Inc. ("Peaktop USA") and Best Eagle Group Ltd. ("Best Eagle"),

states and alleges as follows:

## FACTS COMMON TO ALL COUNTS

### A.     The Parties

1.  Plaintiff Peaktop Holdings is a corporation incorporated in the British Virgin

Islands, with a registered office at P.O. Box 3340, Road Town, Tortola, British Virgin Islands.

Peaktop Holdings is a holding company consisting of, among other things, wholly owned

subsidiaries engaged in the manufacture, sale and distribution of, among other things, home

garden and decoration products.

2.  Defendant GeoGlobal is, upon information and belief, a limited liability

company of the State of New Jersey, with an office located at 111 Corporate Drive, South

Plainfield, New Jersey 07080.  From a point in time commencing in approximately the year 2003

through August 31, 2006, GeoGlobal was appointed to act as a "marketing agent" for Peaktop

Holdings in the territories of the United States, Canada and Mexico.

3.  Defendant Peaktop USA is a company incorporated under the laws of the State

of New York, with a business address of 450 West 15th Street, No. 606, New York, New York

10011.

4.  Peaktop Technologies (USA) Hong Kong Limited ("Peaktop Technologies

Hong Kong") is incorporated in Hong Kong and has a registered office located at Units 1603 -

1605, 16/F, Tower 3, Enterprise Square, 9 Sheung Yuet Road, Kowloon Bay, Hong Kong.

Peaktop Technologies Hong Kong functions as a distributor on behalf of Peaktop Holdings,

exporting goods from Hong Kong to, among other places, North America.

5.  Defendant Jeffrey Robbins is, upon information and belief, a resident of the

State of New Jersey, with an address of 636 Central Avenue, Westfield, New Jersey 07095 and

the managing member of GeoGlobal. He is also the president of Peaktop USA and a member of

the board of directors of Peaktop USA and Peaktop Technologies Hong Kong.

6. Defendant Mark Wilson is, upon information and belief, a resident of the State

of New Jersey, the brother-in-law of defendant Jeffrey Robbins, and a member of GeoGlobal.

He is an officer of Peaktop USA and a member of the board of directors of Peaktop USA and

Peaktop Hong Kong.

7. Defendant Gregory Schutte is, upon information and belief, a resident of the

State of New Jersey, with an address of 182 Mendham Road East, Mendham, New Jersey 07945.

He is an officer of Peaktop USA and a member of the board of directors of Peaktop

Technologies Hong Kong, and a member of GeoGlobal.

8. Defendant Best Eagle is, upon information and belief, an associate company of

GeoGlobal and/or its members, which has the same business address as GeoGlobal, 111

Corporate Boulevard, South Plainfield, New Jersey 07080.

## JURISDICTION

9. This matter falls within the Court's diversity jurisdiction pursuant to 28 U.S.C.

§ 1332 in that the citizenship of plaintiff is diverse from that of all of the defendants, and the

amount in controversy is in excess of $75,000.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 given that

defendants reside in this district and a substantial part of the events or omissions giving rise to

the claims asserted herein took place in this district.

## B.    Background: The Business of Peaktop Holdings

11. Peaktop Holdings was founded in 1996. Through its subsidiaries, Peaktop

Holdings manufactures, designs and/or supplies, among other things, garden and garden

decoration products for use by consumers. It has sold its products throughout Asia and, in more recent years, it has also sold its products in North America.

12. Peaktop Holdings' gardening business consists of two main general categories of products: the "garden decoration/water features" group, which involves garden decorations that may use water, and the "water gardening" group, which involves the sale of water pumps and lighting that are used in garden decorations, such as water fountains and filtration systems.

13. Peaktop Holdings' customers include, among others, well-known retailers such as Lowes, Home Depot, Target, Wal-Mart and K-Mart.

### C.    Peaktop's Entry Into A Marketing Relationship With Jeffrey Robbins And/Or GeoGlobal Partners, LLC

14. In or about the year 2000, defendant Jeffrey Robbins was an employee of one of Peaktop Holdings' customers in the United States, known as "Beckett." Upon information and belief, Mr. Robbins' employment with Beckett related to the sale of certain home gardening products.

15. Mr. Robbins had occasion to communicate with Peaktop Holdings, through its employees, and would seek opportunities to market Peaktop's products in the United States through him.

16. In or about the year 2001-2002, upon information and belief, Mr. Robbins' employment with Beckett came to an end. From and after such time, he continued to maintain contact with Peaktop Holdings through Peaktop Holdings' employees. He continued to comment on Peaktop Holdings needing additional and/or better marketing in the United States.

17. The relationship grew over time and, by the year 2003, Jeffrey Robbins, through his own company, GeoGlobal Partners, LLC ("GeoGlobal"), which was formed by

Jeffrey Robbins, Mark Wilson and Gregory Schutte, began to seek approval from Peaktop to

market Peaktop's products.

18. At or about the same time, Peaktop USA and Peaktop Technologies Hong

Kong were formed, with both companies to serve as the distributing "arms" for Peaktop

Holdings in North America and Hong Kong, respectively.

19. On or about November 6, 2003, Peaktop Holdings, through an assignee,

assigned 49% of the shares of Peaktop Technologies Hong Kong and Peaktop USA to

GeoGlobal, and Jeffrey Robbins was instituted as the President of Peaktop USA. Moreover,

Jeffrey Robbins and Mark Wilson were appointed as members of the board of directors of

Peaktop USA, and Jeffrey Robbins and Gregory Schutte were appointed as members of the

board of directors of Peaktop Technologies Hong Kong. GeoGlobal was also formally appointed

as Peaktop Holdings' marketing agent in the United States, Canada and Mexico.

20. By agreement about January 9, 2004 ("the January 9, 2004 Agreement"),

GeoGlobal was continued as Peaktop Holdings' marketing agent in the United States, Canada

and Mexico.

**D.     The October 24, 2005 Agreement Appointing GeoGlobal**
**As Peaktop USA and Peaktop Technologies Hong Kong's Marketing**
**Agent Through And Including July 31, 2006**

21.     Subsequently, by Agreement dated October 24, 2005 ("the October 24,

2005 Agreement") GeoGlobal was kept in place as the marketing agent for Peaktop USA and

Peaktop Technologies Hong Kong (which had been formally appointed as Peaktop Holdings'

distributors by agreement of the same date).

22. Among other things, the October 24, 2005 Agreement provides that

GeoGlobal would continue to undertake to market Peaktop Holdings' products and to solicit

customers for Peaktop, and also sets forth a method for compensating GeoGlobal. The October 24, 2005 Agreement also provides that its term extended through and including July 31, 2006.

23. GeoGlobal also agreed that it would preserve the confidentiality of information pertaining to Peaktop Holdings and its subsidiaries and that it would utilize its best endeavors to prevent the disclosure of such information.

24. At or about the time that the October 24, 2005 Agreement had been executed, GeoGlobal and Peaktop USA were both operating in tandem under the direction of Jeffrey Robbins and Robbins had, in essence, taken over the marketing operations for Peaktop Holdings in the United States, Canada and Mexico. Thus, either GeoGlobal or Peaktop USA would market and solicit sales for Peaktop Holdings, the orders would be transmitted to Peaktop Technologies Hong Kong by either of the companies acting at Mr. Robbins' direction, and Peaktop Holdings would manufacture and ship the products to the customers in the aforementioned territories. Additionally, Robbins, through GeoGlobal, claimed entitlement to an additional 2% interest in Peaktop USA (purportedly giving Robbins and/or GeoGlobal a controlling 51% shareholder interest in Peaktop USA), which became a source of discussion between the parties.

25. Additionally, Peaktop Holdings recently became aware that defendants have set up another business, known as "Best Eagle Group, Ltd." and which is in the same line of business as Peaktop.

E. **The Parties' Performance Under the October 24, 2005 Agreement, And The Cyclical Nature Of Sales Presentations And The Supplying Of Products To Customers In The Water Garden, Garden Decoration And Water Feature Business**

26. The market for Peaktop Holdings' garden products consists of well-known retailers such as Lowe's, Home Depot, Target, and the like. Sales to such customers operate on a

cyclical basis, with the sales presentation and sales commitments occurring well in advance of

the distribution of the products. Thus, for example, while sales presentations are made in or

about January through July of a given year, products start to be shipped to the customer in

October or November of the same year for the upcoming Spring season.

      27. In connection with making presentations to the present and/or potential

clients of Peaktop Holdings, Robbins and his employees, acting under the GeoGlobal and/or

Peaktop USA umbrella, would  regularly request designs, samples, technical designs and

specifications and/or prototypes from Peaktop Holdings for use in connection with the aforesaid

presentations and/or in response to a prospective customer's request.  GeoGlobal and/or Peaktop

USA, as part of the sales presentation and sales process, would also obtain sales catalogs from

Peaktop Holdings that set forth Peaktop Holdings' product line for the upcoming season.

      **F.**    **With The Agreement Set To Expire On July 31, 2006,**
              **The Parties Agree To Extend The Agreement By One**
              **Additional Month**

      28. Prior to July 31, 2006, Peaktop Holdings and GeoGlobal/Peaktop USA

engaged in discussions concerning an extension of the Agreement.  In the midst of the sales

presentation season (i.e., January/July, 2006), Peaktop Holdings sought to extend the parties'

relationship and to maintain GeoGlobal and Peaktop USA as its marketing agents.

      29. GeoGlobal and/or Peaktop USA, however, despite welcoming such

discussions, appeared intent on "submarining" the discussions.  GeoGlobal and/or Peaktop USA

demanded untenable terms as well as terms that had never previously been part of the parties'

agreement, such as, for example, a term that would require Peaktop Holdings to pay GeoGlobal a

commission on sales of merchandise for which the end customer had not yet even paid.

30. While Peaktop Holdings continued to engage in the discussions in good faith, GeoGlobal/Peaktop USA eventually would agree to extending the agreement for only one month, and by document entitled "Supplemental Deed" and dated July 28, 2006, the parties agreed to extend the October 24, 2005 Agreement through and including August 31, 2006.

**G.    Peaktop Holdings Becomes Aware Of GeoGlobal's And Peaktop USA's Misappropriation Of Peaktop Holdings' Confidential And Proprietary Information**

31. At or about the time that the parties were discussing the extension of the October 24, 2005 Agreement, and thereafter, Peaktop Holdings obtained information that GeoGlobal and/or Peaktop USA were apparently misappropriating Peaktop Holdings' designs, samples, prototypes technical drawings and specifications, and customer base, and diverting them to the use and benefit of GeoGlobal.

32. In this regard, as in the past, in or about the spring and summer of 2006, Geoglobal/Peaktop USA requested designs, prototypes, technical drawings and specifications and catalogs from Peaktop Holdings.

33. Peaktop Holdings, in accordance with GeoGlobal's and Peaktop USA's representations that the requested materials were necessary in discharging their duties under the Agreement, provided GeoGlobal/Peaktop USA with the designs, samples, technical drawings and specifications and prototypes, as requested.

34. The designs, samples, prototypes, technical drawings and specifications that Peaktop Holdings provided involved the specifications for Peaktop Holdings' current and/or future product lines, and constituted, in a sense, the "blue print" from which the product could be created. Peaktop Holdings does not, as a matter of course, make such information generally available, and provided them to GeoGlobal/Peaktop USA only in accordance with the

Agreement, and with the understanding that GeoGlobal/Peaktop USA would act to preserve the confidentiality of such information.

35.  Peaktop Holdings has nonetheless become aware that GeoGlobal/Peaktop USA have misappropriated the aforesaid samples, prototypes technical drawings and specifications for their own benefit (and the benefit of GeoGlobal's members). GeoGlobal/Peaktop USA have apparently done so notwithstanding the fact that defendants Jeffrey Robbins and Mark Wilson are officers and directors of Peaktop USA and PeaktopTechnologies Hong Kong, and owe fiduciary duties of loyalty to Peaktop and the companies.

36.  Upon information and belief, GeoGlobal's/Peaktop USA's scheme proceeded as follows:  GeoGlobal/Peaktop USA would hold themselves out as the marketing agents for Peaktop Holdings to Peaktop Holdings' customers, such as Target, K-Mart, Lowes, Wal-Mart and Home Depot.  GeoGlobal/Peaktop USA would then take orders from the aforesaid customers, using prototypes, samples, technical drawings and specifications, and catalogs provided by Peaktop Holdings, but instead of having the orders filled by Peaktop Holdings, GeoGlobal/Peaktop USA would have the product manufactured by a third party contractor. GeoGlobal/Peaktop USA then "sold" the product to Peaktop Holdings' customers, and provided the customer with GeoGlobal's/Peaktop USA's own invoice, or, upon information and belief, an invoice from Best Eagle, which was to be paid to GeoGlobal and/or Best Eagle.  By engaging in this scheme, GeoGlobal cut Peaktop Holdings and its subsidiaries completely out of the process, and retained all benefit and profit for itself.

37.  Upon learning of this scheme, Peaktop Holdings contacted GeoGlobal and confronted it, through Jeffrey Robbins, with the information that had been obtained concerning

the misappropriation. While Mr. Robbins responded to Peaktop Holdings' communication in this regard, he attempted to justify GeoGlobal's actions under the guise that "small" orders had been placed for customers such as K-Mart and Target (with third party suppliers) because Peaktop Holdings purportedly would not fill the order. Mr. Robbins also stated that he had done so for the purpose of purportedly "saving" the relationship with the aforesaid customers so that Peaktop Holdings could benefit from the placement of "larger" orders in the future.

38. Mr. Robbins' explanation, which concedes that GeoGlobal manufactured products marketed by Peaktop Holdings, is unbelievable. At the time that Mr. Robbins made his statements, the October 24, 2005 Agreement was at the end of its duration and GeoGlobal/ Peaktop USA had already assumed a disagreeable posture in the negotiations to extend the aforesaid agreement.

39. Moreover, Mr. Robbins' proffered explanation is contrary to the fact that GeoGlobal/Peaktop USA quite simply would not have had enough lead time to obtain the approval and/or design of the products that it was marketing. Indeed, there is significant time required to develop a product, test it, get it approved for sale, and then develop prototypes and samples. Notwithstanding this, upon information and belief, GeoGlobal/Peaktop USA is purportedly offering for sale on its own behalf thirty (30) to forty (40) of the very products that Peaktop Holdings has invested time and effort in developing. GeoGlobal/Peaktop USA could not conceivably have developed all of those products on their own since the Agreements expired on August 31, 2006.

40. As demonstrated by the foregoing, at a minimum, based on the limited information defendants have, defendants have misappropriated and converted to their own use confidential and proprietary information and products belonging to Peaktop Holdings.

Moreover, defendants have manufactured (or have caused the manufacturing) of products based on Peaktop Holdings prototypes, or samples, and have sold those products to Peaktop Holdings' own customers, thereby unfairly competing with Peaktop Holdings and tortiously interfering with its prospective economic advantage.

41.  Defendants' wrongful conduct is magnified by the fact that presentations have already been made to customers for Spring 2007.  Thus, defendants' wrongful conduct is having and will have the effect of taking Peaktop Holdings' business and destroying this customer base for Peaktop Holdings and its products.

42.  As a result of defendants' wrongful conduct, plaintiff has suffered, and will continue to suffer, irreparable harm and damages.

## COUNT ONE

## MISAPPROPRIATION

43.  Plaintiff repeats and realleges each of its allegations from the preceding paragraphs as if fully set forth herein.

44.  Defendants, through their conduct as aforesaid, have wrongfully taken confidential and proprietary information that belongs to Peaktop Holdings and has used that information to unfairly compete with plaintiff to the sole benefit of defendants.

45.  Defendants have misappropriated plaintiff's information and has used that information to develop a relationship between defendants and plaintiff's clients in the United States.

46.  As a result of defendants' conduct, plaintiff has suffered harm.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)     Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)     Enjoining defendants from accepting orders for Peaktop;

(c)     Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)     Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical drawings and specifications of Peaktop products or product lines;

(e)     Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

(f)     Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

(g)     Requiring the performance of an accounting for Peaktop USA;

(h)     Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

(i)     Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

(j)     Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

(k)     Dissolution of Peaktop USA;

(l)     Compensatory damages;

(m)     Punitive damages;

(n)     Attorneys fees and costs;

(o)     Such other further and additional relief as the Court may determine to be appropriate.

## COUNT TWO

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

47.  Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

48.  There is implied in every contract of the State of New Jersey a duty of good faith and fair dealing.

49.  Defendants breached the implied covenant of good faith and fair dealing by engaging in the actions described above.

50.  As a direct and proximate result of such breach, plaintiff has suffered harm.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)     Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)     Enjoining defendants from accepting orders for Peaktop;

(c)     Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)     Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical drawings and specifications of Peaktop products or product lines;

      (e)      Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

      (f)      Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

      (g)      Requiring the performance of an accounting for Peaktop USA;

      (h)      Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

      (i)      Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

      (j)      Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

      (k)      Dissolution of Peaktop USA;

      (*l*)      Compensatory damages;

      (m)      Punitive damages;

      (n)      Attorneys fees and costs;

      (*o*)      Such other further and additional relief as the Court may determine to be appropriate.

## COUNT THREE

## CONVERSION

51.  Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

52.  Peaktop Holdings is the owner of its proprietary information, including, but not limited to its samples, catalogs and prototypes.

53. By exercising dominion and control over Peaktop Holdings' proprietary information, to the exclusion of Peaktop Holdings, defendants unlawfully converted such information.

54. As a direct and proximate result of the foregoing, plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)    Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)    Enjoining defendants from accepting orders for Peaktop;

(c)    Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)    Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical drawings and specifications of Peaktop products or product lines;

(e)    Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

(f)    Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

(g)    Requiring the performance of an accounting for Peaktop USA;

(h)    Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

(i)     Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

(j)     Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

(k)     Dissolution of Peaktop USA;

(l)     Compensatory damages;

(m)     Punitive damages;

(n)     Attorneys fees and costs;

(o)     Such other further and additional relief as the Court may determine to be appropriate.

## COUNT FOUR

## UNFAIR COMPETITION

55.  Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

56.  By providing Peaktop Holdings' proprietary information to third party contractors as aforesaid, creating copies and/or duplicates of Peaktop Holdings' product, and selling such products to Peaktop Holdings' customers in the United States, Canada and Mexico, for the sole benefit of defendants, defendants have engaged in unfair competition.

57.  As a direct and proximate result of the foregoing, plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)     Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)     Enjoining defendants from accepting orders for Peaktop;

(c)     Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)     Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical designs and specifications of Peaktop products or product lines;

(e)     Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

(f)     Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

(g)     Requiring the performance of an accounting for Peaktop USA;

(h)     Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

(i)     Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

(j)     Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

(k)     Dissolution of Peaktop USA;

(l)     Compensatory damages;

(m)     Punitive damages;

(n)     Attorneys fees and costs;

(*o*)    Such other further and additional relief as the Court may determine to be appropriate.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

58.  Plaintiff repeats and realleges each of the allegations from the preceding paragraphs as if fully set forth herein.

59.  By misappropriating Peaktop Holdings' proprietary information and wrongfully using that information to unfairly compete with Peaktop as aforesaid, defendants have wrongfully and unlawfully interfered with plaintiff's ability to sell products in the United States.

60.  As a direct and proximate result of the foregoing, defendants have caused harm to plaintiff.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)    Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)    Enjoining defendants from accepting orders for Peaktop;

(c)    Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)    Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical drawings and specifications of Peaktop products or product lines;

(e)        Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

(f)        Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

(g)        Requiring the performance of an accounting for Peaktop USA;

(h)        Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

(i)        Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

(j)        Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

(k)        Dissolution of Peaktop USA;

(l)        Compensatory damages;

(m)        Punitive damages;

(n)        Attorneys fees and costs;

(o)        Such other further and additional relief as the Court may determine to be appropriate.

## COUNT SIX

## BREACH OF FIDUCIARY DUTY

61.  Plaintiff repeats and realleges each of the allegations from the preceding paragraphs as if fully set forth herein.

62. As shareholders and board members of Peaktop USA and Peaktop Hong Kong, defendants Jeffrey Robbins and Mark Wilson owe a fiduciary duty of utmost loyalty to Peaktop Holdings.

63. Defendants Robbins and Wilson breached their aforesaid fiduciary duties by misappropriating confidential and proprietary information from Peaktop Holdings and wrongfully selling it for the benefit of defendants.

64. Plaintiff has suffered damages as a result of the aforesaid breach.

WHEREFORE, plaintiff demands judgment against defendants GeoGlobal, Jeffrey Robbins, Mark Wilson, Gregory Schutte, Peaktop USA and Best Eagle, their successors, assigns, subsidiaries and affiliates, as follows:

(a)    Enjoining defendants from using any confidential or proprietary information belonging to Peaktop;

(b)    Enjoining defendants from accepting orders for Peaktop;

(c)    Enjoining defendants from selling and/or distributing any products based on Peaktop samples, technical drawings and specifications and/or prototypes;

(d)    Requiring defendants to return to Peaktop all catalogs, prototypes, samples, blueprints, technical drawings and specifications of Peaktop products or product lines;

(e)    Requiring defendants to produce an accounting of all sums they have received from sale of products to Peaktop's customers;

(f)    Requiring defendants to provide all accounting records, tax returns and auditor's reports of Peaktop USA for the years 2003 through 2006;

(g)    Requiring the performance of an accounting for Peaktop USA;

    (h)     Imposing a constructive trust on all sums defendants have received from the sale of products to Peaktop customers;

    (i)     Removing defendants Robbins and Wilson from Peaktop USA's board of directors;

    (j)     Requiring defendants Robbins and Schutte to withdraw from Peaktop Technologies Hong Kong's board of directors;

    (k)     Dissolution of Peaktop USA;

    (l)     Compensatory damages;

    (m)    Punitive damages;

    (n)     Attorneys fees and costs;

    (o)     Such other further and additional relief as the Court may determine to be appropriate.

Dated:  September 25, 2006

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation

BY:_____
         EDWARD T. KOLE

and

LAW OFFICES OF WEICHENG WANG
    Attorneys for Plaintiff
    Peaktop Investment Holdings
    (BVI) Limited

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any other proceeding pending in any court or of any pending arbitration proceeding.

DATED:  September 25, 2006

_____
EDWARD T. KOLE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

IN RE PEAKTOP TECHNOLOGIES
(USA), INC. SHAREHOLDER
DERIVATIVE LITIGATION,

                Plaintiff,

v.

PEAKTOP INTERNATIONAL
HOLDINGS LIMITED, et al.,

                Defendants.

-----------------------------------------------------X

Civil Action

Case No. 06 CV 8228

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

---

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
(732) 636-8000
--and--
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Peaktop Investment
Holdings (B.V.I.) Limited

Of Counsel and On The Brief:
EDWARD T. KOLE
JAMES E. TONREY, JR.

On the Brief:
MICHAEL J. WEISSLITZ

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................3

    A.    The Parties .........................................................................3

    B.    Background:  The Business Of Peaktop Holdings.......................3

    C.    The Marketing/Sales Arrangement Between And Among
        Peaktop Holdings, GeoGlobal And Peaktop USA.......................4

    D.    The Marketing/Sales Process, And GeoGlobal's/Peaktop
        USA's Obtaining Of Peaktop Holdings' Confidential And
        Proprietary Information Under The Guise Of Making Sales
        For Peaktop Holdings ...........................................................5

    E.    Unbeknownst To Peaktop Holdings, GeoGlobal And
        Peaktop USA Used Peaktop Holdings'
        Confidential/Proprietary Information To Unfairly Compete
        With Peaktop Holdings...........................................................6

    F.    Peaktop Holdings Files The New Jersey Action Following
        The Expiration Of The Parties' Relationship, Seeking To
        Enjoin GeoGlobal's and Peaktop Holdings' Improper
        Actions As Well As An Award Of Damages...............................7

    G.    GeoGlobal Files The Present Lawsuit -- Two Weeks After
        Peaktop Holdings Had Already Filed The New Jersey
        Action -- Purporting To Allege Claims Based On The Same
        Facts And Circumstances Underlying The New Jersey
        Action.................................................................................8

    H.    There Is No Federal Subject Matter Jurisdiction For The
        Second Lawsuit, And It Is Improper, In Any Event, For
        GeoGlobal To Have Filed The Second Lawsuit In This
        Court ................................................................................10

**TABLE OF CONTENTS (cont'd)**

**PAGE**

ARGUMENT ....................................................................................11

POINT ONE....................................................................................11

THERE IS NO BASIS FOR THIS COURT TO EXERCISE SUBJECT
MATTER JURISDICTION OR SUPPLEMENTAL JURISDICTION
AND THE COMPLAINT SHOULD BE DISMISSED ....................................11

    A.    There Is No Diversity Of Citizenship Jurisdiction For
Plaintiff's Claims, Given That The Complete Diversity
Requirement Is Lacking........................................................11

    B.    Because There Is No Cognizable Lanham Act Claim
Alleged In The Complaint, There Is No Federal Question
Subject Matter Jurisdiction ...................................................13

    C.    In The Absence Of A Federal Jurisdictional Basis For
Subject Matter Jurisdiction, The Court Should Decline To
Hear Plaintiff's Supplemental Jurisdiction Claims....................16

POINT TWO....................................................................................17

IN ADDITION TO THE FACT THAT THERE IS NO SUBJECT
MATTER JURISDICTION FOR PLAINTIFF'S CLAIMS -- WHICH IS
ALONE FATAL TO PLAINTIFF'S COMPLAINT -- THE COMPLAINT
SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT
IT REPRESENTS AN IMPROPER ATTEMPT TO CIRCUMVENT
PEAKTOP HOLDINGS' NEW JERSEY ACTION ........................................17

    A.    To The Extent That GeoGlobal Has Cognizable Claims
Based On The Same Facts And Matters At Issue In The
New Jersey Action, They Must Be Asserted As A
Compulsory Counterclaim In The New Jersey Action ................17

    B.    As A Matter Of The Substantive Law of The State Of New
Jersey Known As The "Entire Controversy Doctrine,"
GeoGlobal Is Required To Assert Its Claims Arising Out
Of The Same Subject Matter Against Peaktop Holdings In
The Pending New Jersey Action.............................................19

    C.    GeoGlobal's Lawsuit Should Also Be Dismissed Through
A Straightforward Application Of The Well-Established
"First Filed Rule" ...............................................................21

<u>**TABLE OF CONTENTS**</u> **(cont'd)**

<u>**PAGE**</u>

CONCLUSION...................................................................................................................24

## TABLE OF AUTHORITIES

**PAGE**

CASES

ACTV, Inc. et al., v. The Walt Disney Co., et al.,
    2002 WL 922172 (No. 01 CIV 8402 (JSR), May 7, 2002), at *2 ..................................... 14, 15

Adam v. Jacobs,
    950 F.2d 89 (2d Cir. 1991) ............................................................................................... 18

Advani Enter., Inc. v. Underwriters at Lloyds,
    140 F.3d 157 (2d Cir. 1998) ............................................................................................. 12

American Employers' Ins. Co. v. Elf Atochem North America, Inc.,
    280 N.J. Super. 601 (App. Div. 1995) .............................................................................. 22

American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.,
    820 F. Supp. 1072 (N.D. Ill. 1993), ................................................................................. 15

Anonymous v. Kaye,
    104 F.3d 355 (2d Cir. 1996) ............................................................................................. 19

Applestein v. United Board & Carton Corp.,
    35 N.J. 343 (1961) ............................................................................................................ 22

Baker v. Gold Seal Liquors, Inc.,
    417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) ....................................... 19

Barres v. Holt, Rinehart and Winston, Inc.,
    74 N.J. 461 (1977) ............................................................................................................ 20

Bass v. DeVink,
    336 N.J. Super. 450 (App. Div. 2001) .............................................................................. 24

Brown v. Brown,
    208 N.J. Super. 372 (App. Div. 1986) .............................................................................. 20

Carrasco v. New York City Off-Track Betting Corp.,
    858 F. Supp. 28 (S.D.N.Y. 1994) .................................................................................... 16

Cogen Techs. v. Boyce Engineering International, Inc.,
    241 N.J. Super. 268 (App. Div.),
    *certif. denied*, 122 N.J. 358 (1990) ................................................................................ 22

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

Colorado River Water Conservation Dist. v. United States,
424 U.S. 800, 817 (1976) ................................................. 21

Columbia Pictures Indus. v. Schneider,
435 F.Supp. 742 (S.D.N.Y. 1977) ........................................ 22

Critical-Vac Filtration Corp. v. Minuteman International, Inc.,
233 F.3d 697 (2d Cir. 2000) ............................................. 19

Curley v. Brignoli, Curley & Roberts Assocs.,
915 F.2d 81 (2d Cir. 1990) ............................................. 12

Curtis v. Citibank, N.A.,
226 F. 2d 133 (2d Cir. 2000) ........................................... 21

Curtis v. Citibank, N.A.,
226 F.2d 133 (2d Cir. 2000) ............................................ 23

D.H. Blair & Co., Inc. v. Gottdeiner, 462 F. 3d 95, 106 (2d Cir. 2006) ........... 21

Devlin v. Transportation Communications Int'l Union,
175 F.3d 121 (2d Cir. 1999) ............................................ 23

DiTrolio v. Antiles,
142 N.J. 253 (1995) .................................................... 20

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
160 F.3d 925 (2d Cir. 1998) ......................................... 11, 12

Exxon Research and Engineering, Co. v. Industrial Risk Insurers,
341 N.J. Super. 489 (App. Div. 2001) ................................... 22

Fields v. Thompson Printing Co., Inc.,
363 F.3d 259 (3d Cir. 2004) ............................................ 20

First City Nat'l Bank & Trust v. Simmons,
878 F.2d 76 (2d Cir. 1989) ........................................ 21, 22, 23

Goldsmith v. Polygram Diversified Ventures, Inc.,
1995 WL 614560 *7 (S.D.N.Y. 1995) ..................................... 15

Gordon v. Breach Science Publishers SA v. American Inst. of Physics,
859 F. Supp. 1521 (S.D.N.Y. 1994) ...................................... 14

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Green v. Clark,
173 F. Supp. 233 (S.D.N.Y. 1959) ................................................... 13

Groden v. Random House, Inc.,
61 F. 3d 1045 (2d Cir. 1995) ......................................................... 14

Herrick Co., Inc. v. SCS Communications, Inc.,
251 F. 3d 315 (2d Cir. 2001) ......................................................... 12

Hoffman v. Wisner Classic Mfg. Co., Inc.,
927 F.Supp. 67 (E.D.N.Y. 1996) ..................................................... 18

In re Joint Eastern and Southern Dist. Asbestos Litig.,
14 F.3d 726, 730 n. 2 (2d Cir. 1993) .............................................. 16

Ivy-Mar Co. v. Weber-Stephen Prods. Co.,
1993 WL 535166, 1993 U.S.Dist. LEXIS 17965 (S.D.N.Y. Dec. 21, 1993) ......... 23

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,
960 F.2d 294 (2d Cir. 1992) ......................................................... 14

Lipton v. Nature Co.,
71 F.3d 464 (2d Cir. 1995) .......................................................... 14

Lubrizol Corp. v. Exxon Corp.,
929 F.2d 960 (3d Cir. 1991) ......................................................... 19

Marcus v. AT&T Corp.,
138 F.3d 46, 57 (2d Cir. 1998) ...................................................... 16

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) .............................. 12

Meeropol v. Nizer,
505 F.2d 232 (2d .................................................................... 22

Melikian v. Corradetti,
791 F.2d 274 (3d Cir. 1986) ......................................................... 20

National Basketball Ass'n v. Motorola, Inc.,
105 F.3d 841 (2d Cir. 1997) ......................................................... 14

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

National Equip. Rental, Ltd. v. Fowler,
    287 F.2d 43 (2d Cir. 1961) ........................................................................................... 23

New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991) ....................................................................................... 22

Ontel Products, Inc. v. Project Strategies Corp.,
    899 F. Supp. 1144 (S.D.N.Y. 1995) ............................................................................ 22

Ontel Products, Inc.,
    899 F. Supp. at 1150 .................................................................................................... 22

Play-by-Play Toys & Novelties,
    208 F.3d 368 (2d Cir. 2000) ........................................................................................ 14

Printing Mart-Morristown, Inc. v. Rosenthal,
    650 F. Supp. 1444 (D.N.J. 1987)................................................................................. 20

Promisel v. First Am. Artificial Flowers Inc.,
    943 F.2d 251 (2d Cir. 1991) ........................................................................................ 16

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994) .......................................................................................... 16

Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir.1997) ................................ 20

Seabrook v. Jacobson,
    153 F.3d 70 (2d Cir. 1998) .......................................................................................... 17

Semi-Tech Litigation LLC v. Bankers Trust Co.,
    234 F. Supp.2d 297 (S.D.N.Y. 2002) .......................................................................... 16

Southern Const. Co. v. Pickard,
    371 U.S. 57 (1962) ....................................................................................................... 18

Southern Const. Co.,
    371 U.S. at 60 (emphasis added) ................................................................................. 19

Stochastic Decisions, Inc. v. DiDomenico,
    995 F.2d 1158 (2d Cir. 1993) ...................................................................................... 20

Stochastic Decisions, Inc.,
    995 F. 2d at 1171 ......................................................................................................... 20

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Stone v. Merritt-Chapman & Scott Corp.,
  156 F. Supp. 315 (S.D.N.Y. 1957) .................................................................. 12

Strawbridge v. Curtiss,
  7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ..................................................... 12

Towers Financial Corp. v. Dun & Bradstreet, Inc.,
  803 F. Supp. 820 (S.D.N.Y. 1992) .................................................................. 14

Tucker v. Nat'l Linen Serv. Corp.,
  92 F. Supp. 502  (N.D. Ga. 1950) ................................................................... 12

United Mine Workers v. Gibbs,
  383 U.S. 715,  86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ...................................... 16

United States v. Aquavella,
  615 F.2d 12  (2d Cir. 1980) ............................................................................ 18

United States v. Cotton,
  535 U.S. 625  (2002) ...................................................................................... 11

Virgilio v. Motorola, Inc.,
  307 F. Supp. 2d 504 (S.D.N.Y. 2004) ............................................................. 11

Wisconsin Dep't of Corrections v.
  Schacht, 524 U.S. 381 (1998) ........................................................................ 12

Yancoskie v. Delaware River Port Authority,
  78 N.J. 321 (1978) ........................................................................................ 22

**STATUTES**

28 U.S.C. § 1367(a), ........................................................................................ 16

Full Faith and Credit Act, 28 U.S.C. § 1738 (1994) ........................................... 21

**RULES**

Fed. R. Civ. P. 13(a) ........................................................................................ 18

Rule 13 ........................................................................................................... 18

Rule 13(a) ........................................................................................ 10, 17, 18, 19

<u>**TABLE OF AUTHORITIES (cont'd)**</u>

**PAGE**

Rule 4:30A of the New Jersey Rules of Civil Procedure.................................................................. 19

Rule 4:4-4................................................................................................................................. 22

Rule 4:6-2................................................................................................................................. 22

**OTHER AUTHORITIES**

2004 U.S. Dist. LEXIS 136, *5-*6 (N.D.N.Y. Jan. 8, 2006)...................................................... 13

## PRELIMINARY STATEMENT

Defendants Peaktop Investment Holdings (B.V.I.) Limited ("Peaktop Holdings"),

SRG Group, Chun Kuei Lin, Vincent Wei Hung Lin, Mike Wu, and Chun-Hui Huang

("Defendants") submit this brief, together with the Declaration of James E. Tonrey, Jr., dated

November 20, 2006 ("Tonrey Decl.") in support of their motion to dismiss plaintiff's complaint.

This lawsuit is nothing short of remarkable. Contrary to well-worn, bedrock

principles, plaintiff filed the complaint in this court, notwithstanding the fact that the complaint,

on its face, demonstrates that this court does not have subject matter jurisdiction. Indeed, while

plaintiff purports to invoke diversity of citizenship jurisdiction for its state law claims, the

complaint, on its face, demonstrates that plaintiff and defendants Silk Road Gifts and Vincent

Lin are citizens of the State of New Jersey -- destroying "complete diversity," and sounding the

death knell for diversity jurisdiction. Likewise, plaintiff's claim of federal question jurisdiction

-- the only other jurisdictional basis alleged by plaintiff -- fails, as a matter of law, given that the

one letter alleged in the complaint to give rise to a Lanham Act claim is insufficient, as a matter

of law to elevate what is essentially a state law unfair competition claim to an actionable Lanham

Act claim. There is no federal subject matter jurisdiction for this lawsuit and it should be

dismissed in its entirety.

While we submit that the Court need look no further, the problems with plaintiff's

complaint do not end there. Though ignored by plaintiff, prior to GeoGlobal's filing of the

present lawsuit, on September 25, 2006, Peaktop Holdings filed a six count complaint against

GeoGlobal and others in the District of New Jersey ("the New Jersey Action"), alleging

misappropriation of confidential/proprietary information and seeking, among other things, to

enjoin GeoGlobal, Peaktop Technologies (USA), Inc. ("Peaktop USA"), and others from using

such information.

The New Jersey action details Peaktop Holdings' sale of home gardening products in North America through GeoGlobal and Peaktop USA as its "marketing agents," the termination of the parties' relationship in August, 2006, and Peaktop Holdings' discovery that GeoGlobal and Peaktop USA had misappropriated its confidential/proprietary information to unfairly compete with Peaktop Holdings. The New Jersey Action asserts, among other things, claims of misappropriation and unfair against GeoGlobal and Peaktop USA (and others) and seeks injunctive relief as well as damages.

Notwithstanding the pendency of the New Jersey Action, putting in issue Peaktop USA's and GeoGlobal's misconduct concerning Peaktop Holdings' customers in the United States -- GeoGlobal has now filed a complaint in this Court, purporting to put in issue the same matters that are already at issue in the pending New Jersey Action. In fact, though ignored by GeoGlobal, the September 14, 2006 letter to Peaktop Holdings' customers allegedly sent by Mr. Lin is directly related to, and only in response to, Peaktop USA's and GeoGlobal's misconduct that is already "front and center" in the pending New Jersey Action.

The fact is, that, no matter how GeoGlobal tries to characterize its lawsuit, it is based on the same core set of operative facts as are already at issue in the New Jersey Action, and it is improper, as a matter of law for GeoGlobal to have filed a subsequent lawsuit in this Court. Indeed, where, as here, a defendant has claims related to a plaintiff's pending claims, Federal Rule of Civil Procedure 13(a) requires that the defendant assert those claims as a compulsory counterclaim in the pending suit; it is improper for the defendant to file them in a separate complaint, in a separate forum. Moreover, it is well-settled as a matter of New Jersey substantive law known at the "Entire Controversy Doctrine" that a party is required to assert all claims that are related to a pending action within that action, or is barred from asserting them in a

2

subsequent action.  And, lastly, even beyond this, a straightforward application of the well-settled "first filed rule" -- rooted in concepts of judicial economy, conservation of resources and fairness to parties -- demonstrates that the present lawsuit should be dismissed, in favor of the previously-pending New Jersey Action.

In sum, plaintiff's complaint is fatally defective and should be dismissed.

**STATEMENT OF FACTS**[1]

A.    **The Parties**

Plaintiff, GeoGlobal -- alleged to be a "nominal plaintiff" -- is alleged to be a limited liability company of the State of New Jersey.

Defendant Peaktop Holdings is alleged to be a corporation organized and existing under the laws of Bermuda

Defendant SRG Group is alleged to be a corporation of the State of New Jersey (i.e., the same citizenship as plaintiff, GeoGlobal).

Defendant Peaktop USA -- alleged to be a "nominal defendant" -- is a corporation of the State of New York.[2]

B.    **Background:  The Business Of Peaktop Holdings**

Peaktop Holdings was founded in 1996.  Through its subsidiaries, Peaktop Holdings manufactures, designs and/or supplies, among other things, garden and garden decoration products for use by consumers.  (Tonrey Decl., at Exh. A (Complaint filed September

---

[1] The Statement of Facts are taken from GeoGlobal's October 11, 2006 complaint, except where indicated otherwise, and, for purposes of this motion only, are deemed to be true.

[2] The complaint alleges that the remaining defendants, Chun Kuei Lin, Vincent Wei Hung Lin, Mike Wu and Chun-Hui Huang are officers and directors of the defendant companies.  The complaint also alleges that Vincent Wei Hung Lin is, like plaintiff GeoGlobal, a resident of the State of New Jersey.

25, 2005).)  It has sold its products throughout Asia and, in more recent years, it has also sold its products in North America.  (Id.)

Peaktop Holdings' gardening business consists of two main general categories of products:  the "garden decoration/water features" group, which involves garden decorations that may use water, and the "water gardening" group, which involves the sale of water pumps and lighting that are used in garden decorations, such as water fountains and filtration systems.  (Id.)

Peaktop Holdings' customers include, among others, well-known retailers such as Lowes, Home Depot, Target, Wal-Mart and K-Mart.  (Id.)

### C.    The Marketing/Sales Arrangement Between And Among Peaktop Holdings, GeoGlobal And Peaktop USA

Since in or about the year 2003, and continuing until recently, Peaktop Holdings marketed/sold its products in North America through GeoGlobal and Peaktop USA.  (Id.)

GeoGlobal was formed in or about the year 2003 by Jeffrey Robbins, Mark Wilson and Gregory Schutte.  (Id.)  Jeffrey Robbins had been acquainted with Peaktop Holdings for several years, and had actively solicited opportunities to market Peaktop Holdings' products in the North America.  (Id.)

Peaktop USA was likewise formed in or about the year 2003 and it was intended to serve as Peaktop Holdings' marketing and sale "arm" in North America.  (Id.)  At or about the same time that it was formed, Peaktop Holdings entered into an arrangement for GeoGlobal to be Peaktop Holdings' marketing/sales agent in North America, and provided GeoGlobal with a 49% shareholder equity interest in Peaktop USA.  (Id.)  Moreover, Jeffrey Robbins was instituted as Peaktop USA's president, and Robbins and Mark Wilson were put on Peaktop USA's board of directors.  (Id.)

By in or about the year 2005, GeoGlobal and Peaktop USA were operating in tandem under the direction of Jeffrey Robbins and Robbins had, in essence, taken over the marketing operations for Peaktop Holdings in North America. (Id.) Thus, either GeoGlobal or Peaktop USA would market and solicit sales for Peaktop Holdings in North America, the orders would be transmitted to Peaktop Holdings by either of the companies acting at Mr. Robbins' direction, and Peaktop Holdings would manufacture and ship the products to the customers. (Id.)

**D.    The Marketing/Sales Process, And GeoGlobal's/Peaktop USA's Obtaining Of Peaktop Holdings' Confidential And Proprietary Information Under The Guise Of Making Sales For Peaktop Holdings**

The market for Peaktop Holdings' garden products consists of well-known retailers such as Lowe's, Home Depot, Target, and the like. (Id.) Sales to such customers operate on a cyclical basis, with the sales presentation and sales commitments occurring well in advance of the distribution of the products. (Id.) Thus, for example, while sales presentations are made in or about January through July of a given year, products start to be shipped to the customer in October or November of the same year for the upcoming Spring season. (Id.)

In connection with making presentations to the present and/or potential clients of Peaktop Holdings, Robbins and his employees, acting under the GeoGlobal and/or Peaktop USA umbrella, would  regularly request designs, samples, technical designs and specifications and/or prototypes from Peaktop Holdings for use in connection with the aforesaid presentations and/or in response to a prospective customer's request. (Id.) GeoGlobal and/or Peaktop USA, as part of the sales presentation and sales process, would also obtain sales catalogs from Peaktop Holdings that set forth Peaktop Holdings' product line for the upcoming season. (Id.)

    **E.**    **Unbeknownst To Peaktop Holdings, GeoGlobal And Peaktop USA Used Peaktop Holdings' Confidential/Proprietary Information To Unfairly Compete With Peaktop Holdings**

In or about the summer of the year 2006, Peaktop Holdings entered into discussions with GeoGlobal and Peaktop USA regarding an extension of the parties' marketing/sales agreement beyond its July 31, 2006 expiration date. (Id.)

At or about that time and thereafter, Peaktop Holdings obtained information that GeoGlobal and/or Peaktop USA were misappropriating Peaktop Holdings' designs, samples, prototypes technical drawings and specifications, and customer base, and diverting them for the use and benefit of GeoGlobal. (Id.)

In this regard, as in the past, in or about the spring and summer of 2006, GeoGlobal/Peaktop USA requested designs, prototypes, technical drawings and specifications and catalogs from Peaktop Holdings. (Id.) Peaktop Holdings, in accordance with GeoGlobal's and Peaktop USA's representations that the requested materials were necessary in discharging their duties under the sales/marketing arrangement, provided GeoGlobal/Peaktop USA with the designs, samples, technical drawings and specifications and prototypes, as requested. (Id.) The designs, samples, prototypes, technical drawings and specifications that Peaktop Holdings provided involved the specifications for Peaktop Holdings' current and/or future product lines, and constituted, in a sense, the "blue print" from which the product could be created. (Id.)

However, as Peaktop Holdings later discovered, GeoGlobal and Peaktop USA's proffered reasons for seeking the aforesaid information were mere pretext: the fact was that, unbeknownst to Peaktop Holdings, GeoGlobal and Peaktop USA were scheming to misappropriate Peaktop Holdings' confidential/proprietary information to unfairly compete with Peaktop Holdings. Upon information and belief, GeoGlobal's/Peaktop USA's scheme proceeded as follows: GeoGlobal/Peaktop USA would hold themselves out as the marketing agents for

               6

Peaktop Holdings to Peaktop Holdings' customers, such as Target, K-Mart, Lowes, Wal-Mart, and Home Depot. (Id.) GeoGlobal/Peaktop USA would then take orders from the aforesaid customers, using prototypes, samples, technical drawings and specifications, and catalogs provided by Peaktop Holdings, but instead of having the orders filled by Peaktop Holdings, GeoGlobal/Peaktop USA would have the product manufactured by a third party contractor. GeoGlobal/Peaktop USA then "sold" the product to Peaktop Holdings' customers, and provided the customer with GeoGlobal's/Peaktop USA's own invoice, or, upon information and belief, an invoice from Best Eagle (a company formed, upon information and belief, Jeffrey Robbins and/or GeoGlobal), which was to be paid to GeoGlobal and/or Best Eagle. (Id.) By engaging in this scheme, GeoGlobal cut Peaktop Holdings and its subsidiaries completely out of the process, and retained all benefit and profit for itself.

**F.    Peaktop Holdings Files The New Jersey Action Following The Expiration Of The Parties' Relationship, Seeking To Enjoin GeoGlobal's and Peaktop Holdings' Improper Actions As Well As An Award Of Damages**

Peaktop Holdings, GeoGlobal and Peaktop USA engaged in negotiations concerning an extension of their sales/marketing agreement, but the negotiations resulted in an extension of the agreement by only one month, that is, through August 31, 2006. (Id.)

During the negotiation process, while Peaktop Holdings attempted to extend the relationship, GeoGlobal/Peaktop USA assumed unreasonable negotiating positions and did not appear committed to the discussions. (Id.) During the process, as indicated above, Peaktop Holdings also became aware that GeoGlobal and Peaktop USA were misappropriating its confidential information and unfairly competing with Peaktop Holdings. (Id.)

Following the termination of the parties' discussions, on September 25, 2006, Peaktop Holdings filed a six count complaint against Peaktop USA and GeoGlobal. (Id.)

The complaint sets forth six counts for relief stemming from GeoGlobal's and Peaktop USA's misappropriation of Peaktop Holdings confidential/proprietary information: misappropriation (count one), breach of the implied covenant of good faith and fair dealing (count two), conversion (count three), unfair competition (count four), tortious interference with prospective economic advantage (count five), and breach of fiduciary duty (count six). (Id.) Peaktop Holdings seeks injunctive relief as well as damages and other related relief.

**G.    GeoGlobal Files The Present Lawsuit -- Two Weeks After Peaktop Holdings Had <u>Already</u> <u>Filed</u> The New Jersey Action -- Purporting To Allege Claims Based On The Same Facts And Circumstances Underlying The New Jersey Action**

On or about October 9, 2006, two weeks <u>after</u> Peaktop Holdings had already filed the New Jersey Action, GeoGlobal, purporting to be the "majority shareholder" of Peaktop USA, filed a purported derivative lawsuit in this Court seeking various relief against Peaktop Holdings, SRG Group and others. <u>See</u> Complt., ¶ 5 ("[t]his is a derivative action brought by GeoGlobal [sic] Partners, LLC, the majority shareholder of Peaktop Technologies (USA), Inc. . . . . ") (hereinafter, "the Second Lawsuit").

The Second Lawsuit contains eleven counts, ten of which are based on state law: breach of fiduciary duty (counts one and two), tortious interference with existing contracts (count three), tortious interference with continuing business relations (count four), unfair or deceptive acts or practice in violation of state statutory law (count six), common law unfair competition (count seven), indemnification (count eight), accounting (count nine), common law corporate disparagement (count ten), unjust enrichment (count eleven). One count of the complaint is purportedly based on the Lanham Act (count five). (Id.)

The crux of the Second Lawsuit is a letter dated September 14, 2006 purportedly sent by defendant Chun Kuei Lin on behalf of Peaktop Holdings to the purchasers of Peaktop

Holdings in the United States. According to the Second Lawsuit, the letter advised the aforesaid

purchasers that GeoGlobal and Peaktop USA are separate entities that will no longer represent

Peaktop Holdings in the United States. See Second Lawsuit, ¶ 38 ("The letter states that "'Geo

Global Partners, LLC and Peaktop Technologies (USA), Inc. or 'PTTUSA' are separate entities.

They will no longer represent us [Peaktop Holdings] in the U.S. market effective September 1,

2006.'"). The Second Lawsuit also alleges that the letter advised customers to place orders for

Peaktop Holdings' products directly with Peaktop Holdings through its authorized

representatives, and not through Peaktop USA. See Complaint, ¶ 36 (". . . Chun Kuei Lin,

having first identified himself as "Chairman and CEO" of [Peaktop Holdings], informed

customers of [Peaktop USA] that 'effective immediately' orders for the Products were to be

placed directly with [Peaktop Holding's authorized representatives], and not with [Peaktop

USA]."). The Second Lawsuit seeks various equitable remedies, including orders prohibiting

Peaktop Holdings from making purported false communications regarding Peaktop USA, an

accounting and damages.

       The Second Lawsuit, in essence, derives from the New Jersey Action and is based

on the same facts and circumstances in issue in the New Jersey Action. Though ignored by

GeoGlobal, the letter that it puts in issue in the Second Action is, in fact, based upon -- and in

direct response to -- the misconduct by GeoGlobal and Peaktop USA that Peaktop Holdings

claims is wrongful in the New Jersey action. The facts and circumstances in the Second Lawsuit

thus derive from and are inextricably connected to the core set of facts underlying the New

Jersey Action.

The Second Lawsuit is, therefore, only one part of the overall controversy in issue between the parties. It is improper for GeoGlobal to have commenced an entirely separate lawsuit in this Court.[3]

### H.    There Is No Federal Subject Matter Jurisdiction For The Second Lawsuit, And It Is Improper, In Any Event, For GeoGlobal To Have Filed The Second Lawsuit In This Court

Despite having purported to invoke this Court's subject matter jurisdiction, plaintiff's complaint, on its face, demonstrates that the Court does not have subject matter jurisdiction.

The fact of the matter is that plaintiff GeoGlobal is a citizen of the State of New Jersey, as alleged in the complaint, as are defendants Vincent Lin and Silk Road Gifts. Given that GeoGlobal -- whether characterized as "nominal" or not -- is the only plaintiff in this case, and its citizenship is not diverse from that of defendants, there is no "complete diversity" and diversity of citizenship jurisdiction is not present. Additionally, there is no federal subject matter jurisdiction because plaintiff's purported Lanham Act claim is no more than a state law unfair competition claim, at best, given that its reliance on one instance of correspondence cannot, as a matter of law, arise to the level of advertising or promotion required by the Lanham Act.

---

[3] Interestingly enough, on or about November 6, 2006, following its filing of the Second Lawsuit at issue in the present litigation, GeoGlobal filed yet another complaint against Peaktop International Holdings Limited and other defendants, this time filing the case in the Superior Court of New Jersey, Hudson County ("the Hudson County Action") Like the Second Lawsuit (presently before this Court), the Hudson County Action is also based, in part, on the September 14, 2006 letter allegedly sent by Mr. Lin. The Hudson County Litigation demonstrates not only that the litigation between the parties belongs in New Jersey (where Peaktop Holdings filed its lawsuit in the first place), but also that GeoGlobal has adopted an improper, and substantively indefensible tactic of commencing litigation on various fronts. For the reasons stated herein, GeoGlobal's complaint is improper and should be dismissed in its entirety.

Lastly, the complaint is improper, in any event, because it has been filed in this Court, rather than in New Jersey and is thus barred by Federal Rule 13(a), New Jersey's Entire Controversy Doctrine, and a straightforward application of the well-settled "first filed rule."

## ARGUMENT

### POINT ONE

**THERE IS NO BASIS FOR THIS COURT TO EXERCISE SUBJECT MATTER JURISDICTION OR SUPPLEMENTAL JURISDICTION AND THE COMPLAINT SHOULD BE DISMISSED**

It is fundamental that the United States Courts are courts of limited jurisdiction and that a lawsuit is cognizable in such courts only if there is a basis for the Court to exercise subject matter jurisdiction. See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998) ("[J]urisdiction is not a game...it is one of the fundamental tenets of our Constitution that only some cases may be brought in federal court."). So fundamental is the requirement for subject matter jurisdiction that defects in subject matter jurisdiction can be raised at any time, on motion of any party or by the Court acting sua sponte. See United States v. Cotton, 535 U.S. 625, 630 (2002) ("Subject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived."). Subject matter jurisdiction is a non-waivable bedrock requirement; when a lawsuit does not have subject matter jurisdiction, the matter is not cognizable in federal court, fatally defective and should be dismissed. See Virgilio v. Motorola, Inc., 307 F. Supp. 2d 504 (S.D.N.Y. 2004).

### A.    There Is No Diversity Of Citizenship Jurisdiction For Plaintiff's Claims, Given That The Complete Diversity Requirement Is Lacking

"A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no

defendant who are citizens of the same State." <u>Wisconsin Dep't of Corrections v. Schacht</u>, 524

U.S. 381, 388 (1998). Subject matter jurisdiction represents "an unwaivable *sine qua non* for the

exercise of federal judicial power." <u>Herrick Co., Inc. v. SCS Communications, Inc.</u>, 251 F. 3d

315, 321 (2d Cir. 2001) (quoting <u>Curley v. Brignoli, Curley & Roberts Assocs.</u>, 915 F.2d 81, 83

(2d Cir. 1990)). Importantly, "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332

bears the burden of demonstrating that the grounds for diversity exist and that diversity is

complete." <u>Advani Enter., Inc. v. Underwriters at Lloyds</u>, 140 F.3d 157, 160 (2d Cir. 1998)

(citing <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed.

1135 (1936); <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

Diversity jurisdiction exists over civil actions: (1) between "citizens of different

States" and (2) between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C.

§ 1332(a)(1) & (2). Diversity jurisdiction is available only when all adverse parties to a

litigation are <u>completely</u> diverse in their citizenships. <u>E.R. Squibb & Sons, Inc. v. Accident &</u>

<u>Cas. Ins. Co.</u>, 160 F.3d 925, 930 (2d Cir. 1998)(emphasis added)(citing <u>Strawbridge v. Curtiss</u>, 7

U.S. (3 Cranch) 267 (1806)).

The complete diversity requirement is no different where, as here, a party has

purported to file a shareholder derivative lawsuit. In such cases, courts look to substance rather

than form, and base the diversity analysis on the citizenship of the party actually filing the case,

<u>i.e.</u>, the plaintiff stockholder. <u>See</u>, <u>e.g.</u>, <u>Stone v. Merritt-Chapman & Scott Corp.</u>, 156 F. Supp.

315 (S.D.N.Y. 1957) (holding that plaintiff stockholder's citizenship destroyed diversity in

stockholder's derivative action); <u>Tucker v. Nat'l Linen Serv. Corp.</u>, 92 F. Supp. 502, 505 (N.D.

Ga. 1950) (rejecting, in shareholder derivative action, plaintiff shareholder's argument that

corporation was the only party plaintiff for purposes of jurisdiction and determining that

"plaintiff, in whatever capacity she may appear, is a party here and cannot be treated as absent or nonexistent for jurisdictional purposes"), aff'd, 188 F.2d 265 (5th Cir.), cert. denied, 342 U.S. 828 (1951); see generally Green v. Clark, 173 F. Supp. 233, 236-37 (S.D.N.Y. 1959) (remarking that if either nominal plaintiff or beneficial plaintiff in shareholder derivative action were citizens of New York (as was defendant) diversity would be destroyed).

Recently, for example, in Steele v. Anderson, in the context of remanding a matter to state court, the United States District Court for the Northern District of New York determined that there was no federal diversity jurisdiction with respect to a shareholder derivative action where the plaintiff shareholders were citizens of the same state as certain defendants. 2004 U.S. Dist. LEXIS 136, *5-*6 (N.D.N.Y. Jan. 8, 2006). The Court found that, because the plaintiff shareholders were not diverse from all defendants, the court could not exercise jurisdiction over the matter and that removal to federal court was thus improper. Id. at *6.

Likewise, as explained above, this is a case in which the so-called nominal plaintiff, GeoGlobal -- who acknowledges in the complaint that it is the "majority shareholder" of Peaktop USA, and that it is the party who has "brought" this action -- is a resident of the State of New Jersey, as is defendant SRG Group (and Vincent Lin). Because complete diversity is lacking, this court does not have subject matter jurisdiction based on diversity of citizenship.

**B.    Because There Is No Cognizable Lanham Act Claim Alleged In The Complaint, There Is No Federal Question Subject Matter Jurisdiction**

It is well settled that a plaintiff alleging a Lanham Act violation must allege that (1) the defendant made false or misleading factual representations regarding the nature, characteristics or qualities of plaintiff's services; (2) the defendant used the false and misleading representations "in commerce"; (3) the defendant made the representations in the context of

commercial advertising or commercial promotion; and (4) defendant made plaintiff believe that it was likely to be damaged by the representations.  Towers Financial Corp. v. Dun & Bradstreet, Inc., 803 F. Supp. 820 (S.D.N.Y. 1992).  A claim under the Lanham Act for false advertising requires allegations that: "(1) the advertisement is literally false, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers."  Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995).  "In order to be actionable under the Lanham Act, a challenged advertisement must be literally false or, though literally true, likely to mislead or confuse consumers."  Groden v. Random House, Inc., 61 F. 3d 1045, 1051 (2d Cir. 1995) (citing Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992)).

Likewise, it is well-established that, to state a claim of false representation under the Act, the alleged untruthful statements must be made for the purpose of "commercial advertising or promotion," which means that the representations "must be disseminated sufficiently to the relevant purchasing public."  See Play-by-Play Toys & Novelties, 208 F.3d 368, 383 (2d Cir. 2000), Gordon v. Breach Science Publishers SA v. American Inst. of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994); see also ACTV, Inc. et al., v. The Walt Disney Co., et al., 2002 WL 922172 (No. 01 CIV 8402 (JSR), May 7, 2002), at *2.  Furthermore, plaintiff must be able to allege that the statement is "material," which requires a showing that the defendant "misrepresented an inherent quality or characteristic of the product."  National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997).

Where, as here, a plaintiff alleges one statement, or one communication containing an alleged actionable statement, courts have dismissed the claim as a matter of law. In ACTV, Inc., 2002 WL922172 at *2, this Court dismissed plaintiff's Lanham Act claim which

was based on one instance of correspondence, an e-mail. See id. ("No matter how liberally read in plaintiffs' favor the single e-mail here alleged cannot, as a matter of law meet this standard."). The Court also found that a single instance of correspondence would be stretching beyond reason the meaning of "advertising or promotion." See id. ("[I]t is stretching beyond reason to read the e-mail as being a form of advertising or promotion at all."). Likewise, the Court in ACTV, Inc. addressed and quoted Goldsmith v. Polygram Diversified Ventures, Inc., 1995 WL 614560 *7 (S.D.N.Y. 1995) for a similar proposition ("a single letter to a publisher cannot constitute "advertising or promotion as those terms are commonly understood.")

Courts have also cautioned against the unintended broadening of the Lanham Act to reach every form of conduct that may otherwise be actionable under traditional state-law unfair competition principles. Indeed, in American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc., 820 F. Supp. 1072 (N.D. Ill. 1993), plaintiff asserted a Lanham Act claim against defendant, based on correspondence by defendant to a licensor that contained allegedly false statements about the plaintiff. The Court granted the defendant's motion to dismiss the Lanham Act claims. In doing so, the Court stated that it would be inappropriate to extend the Lanham Act to every instance of unfair competition under state law. See id. at 1072. ("To permit a single private correspondence to constitute either one of these terms ["advertising" or "promotion"] for purposes of 43(a)(2) liability would render their use superfluous and would sweep within the ambit of the Act any disparaging comment made in the context of a commercial transaction.")

Here, the September 14, 2006 letter alleged by plaintiff to be the basis for plaintiff's alleged Lanham Act claim cannot, as a matter of law, give rise to a cognizable Lanham Act claim. The correspondence cannot reasonably be construed as advertising or

promotion but, rather, consistent with its purpose, appears to serve as merely an announcement

of the termination of the business relationship between Peaktop Holdings and

GeoGlobal/Peaktop USA.  As a matter of law, the single instance of correspondence is an

insufficient basis on which to allege a Lanham Act claim, and it should be dismissed.

    **C.**    **In The Absence Of A Federal Jurisdictional Basis For Subject Matter Jurisdiction, The Court Should Decline To Hear Plaintiff's Supplemental Jurisdiction Claims**

Pursuant to 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy under Article III of the United States

Constitution."  Disputes are part of the "same case or controversy" within § 1367 when they

"derive from a common nucleus of operative fact."  Promisel v. First Am. Artificial Flowers Inc.,

943 F.2d 251, 254 (2d Cir. 1991) (internal citation omitted).  In deciding whether to exercise

supplemental jurisdiction over state law claims, a court must engage in a two-tiered analysis,

under which it first considers whether the claims at issue are claims over which it has the power

to exercise such jurisdiction, and then determines whether that power should be exercised.  Semi-

Tech Litigation LLC v. Bankers Trust Co., 234 F. Supp.2d 297 (S.D.N.Y. 2002).

However, a district court "may not exercise supplemental jurisdiction over claims

unless the court has 'original jurisdiction' over at least one of the plaintiff's claims."  In re Joint

Eastern and Southern Dist. Asbestos Litig., 14 F.3d 726, 730 n. 2 (2d Cir. 1993).  In general, to

invoke supplemental jurisdiction over state law claims, there must be an underlying cognizable

federal claim.  Carrasco v. New York City Off-Track Betting Corp., 858 F. Supp. 28 (S.D.N.Y.

1994).  United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218

(1966).  "In general, where the federal claims are dismissed before trial, the state [law] claims

should be dismissed as well."  Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) (citing

Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994)). It is particularly appropriate for the district court to dismiss where "the federal claim on which the state claim hangs has been dismissed." Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998).

Here, as demonstrated above, neither diversity jurisdiction nor federal question jurisdiction exists for plaintiff's claims. Plaintiff's claims here are, in essence, state law claims and are not appropriately cognizable in this Court. Given that a court should not exercise jurisdiction in such circumstances, plaintiff's complaint should be dismissed in its entirety.

### POINT TWO

**IN ADDITION TO THE FACT THAT THERE IS NO SUBJECT MATTER JURISDICTION FOR PLAINTIFF'S CLAIMS -- WHICH IS ALONE FATAL TO PLAINTIFF'S COMPLAINT -- THE COMPLAINT SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT IT REPRESENTS AN IMPROPER ATTEMPT TO CIRCUMVENT PEAKTOP HOLDINGS' NEW JERSEY ACTION**

In addition to the fact that plaintiff's lawsuit should be dismissed for lack of subject matter jurisdiction, it should also be dismissed because it is an improper attempt to circumvent Peaktop Holdings' pending lawsuit in the United States District Court for the District of New Jersey.

**A.    To The Extent That GeoGlobal Has Cognizable Claims Based On The Same Facts And Matters At Issue In The New Jersey Action, They Must Be Asserted As A Compulsory Counterclaim In The New Jersey Action**

As demonstrated above, this lawsuit is merely a component of the dispute between the parties, with the crux of the dispute being the termination of the parties' marketing/distribution relationship and the parties' subsequent conduct with respect to pre-existing customers. However, to the extent that GeoGlobal has any cognizable causes of action

against Peaktop Holdings based on the same facts and circumstances, GeoGlobal is required by

Rule 13(a) to assert them in the New Jersey Action as a compulsory counterclaim.

Rule 13(a) of the Federal Rules of Civil Procedure states as follows:

> A pleading shall state as a counterclaim any claim which at
> the time of serving the pleading the pleader has against any
> opposing party, if it arises out of the transaction or occurrence that
> is the subject matter of the opposing party's claim and does not
> require for its adjudication the presence of third parties of whom
> the court cannot acquire jurisdiction. But the pleader need not state
> the claim if (1) at the time the action was commenced the claim
> was the subject of another pending action, or (2) the opposing
> party brought suit upon the claim by attachment or other process
> by which the court did not acquire jurisdiction to render a personal
> judgment on that claim, and the pleader is not stating any
> counterclaim under this Rule 13.

Fed. R. Civ. P. 13(a).

Rule 13(a) is "designed to prevent multiplicity of actions and to achieve

resolution in a single lawsuit of all disputes arising out of common matters." Southern Const.

Co. v. Pickard, 371 U.S. 57, 60 (1962). "The test for determining whether a counterclaim is

compulsory is whether a logical relationship exists between the claim and the counterclaim and

whether the essential facts of the claims are 'so logically connected that considerations of

judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' " Adam v.

Jacobs, 950 F.2d 89, 92 (2d Cir. 1991)(citing United States v. Aquavella, 615 F.2d 12, 22 (2d

Cir. 1980)). A claim is compulsory if "a logical relationship exists between the claim and the

counterclaim and [if] the essential facts of the claims are so logically connected that

considerations of judicial economy and fairness dictate that all the issues be resolved in one

lawsuit." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks omitted)

(emphasis added) Courts are to interpret Rule 13 liberally, consistent with the general objectives

to avoid multiplicity of litigation, minimize circuity of actions and foster judicial economy.

Hoffman v. Wisner Classic Mfg. Co., Inc., 927 F.Supp. 67 (E.D.N.Y. 1996). Rule 13(a) is "particularly directed against one who fail[s] to assert a counterclaim in one action and then institute[s] a second action in which that counterclaim became the basis of the complaint." Southern Const. Co., 371 U.S. at 60 (emphasis added). If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit. Critical-Vac Filtration Corp. v. Minuteman International, Inc., 233 F.3d 697, 699 (2d Cir. 2000) (citing to Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974)).

Here, GeoGlobal has, contrary to the requirements of Rule 13(a), protracted the proceedings and improperly invoked the jurisdiction of a court in another forum where Peaktop Holdings has already filed a lawsuit arising out of the same subject matter. Pursuant to a straightforward application of Rule 13(a), GeoGlobal, to the extent that GeoGlobal has any cognizable claims against Peaktop Holdings (we dispute that there are any), GeoGlobal is required to have asserted them as a compulsory counterclaim in the New Jersey lawsuit pursuant to Rule 13(a). Because GeoGlobal has failed to do so, its complaint in this forum should be dismissed.

**B.    As A Matter Of The Substantive Law of The State Of New Jersey Known As The "Entire Controversy Doctrine," GeoGlobal Is Required To Assert Its Claims Arising Out Of The Same Subject Matter Against Peaktop Holdings In The Pending New Jersey Action**

Similarly, GeoGlobal's fragmentation of the dispute with Peaktop Holdings through filing a lawsuit in this Court constitutes a violation of New Jersey's Entire Controversy Doctrine.

New Jersey's entire controversy doctrine requires all claims arising out of the same controversy to be joined in a single action. Anonymous v. Kaye, 104 F.3d 355 (2d Cir. 1996)(citing to Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 965 (3d Cir. 1991)). Rule 4:30A

of the New Jersey Rules of Civil Procedure provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine." "[T]he central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." <u>Fields v. Thompson Printing Co., Inc.</u>, 363 F.3d 259, 265 (3d Cir. 2004) (quoting <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 267 (1995)). "The doctrine applies to both subsequent actions asserting different legal theories and those requesting alternative relief." <u>Printing Mart-Morristown, Inc. v. Rosenthal</u>, 650 F. Supp. 1444, 1447 (D.N.J. 1987).

"The entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine." <u>Melikian v. Corradetti</u>, 791 F.2d 274, 279 (3d Cir. 1986). The doctrine is "...intended to prevent the fractionalization of litigation by requiring all claims between the same parties arising out of or relating to the same transactional circumstances to be joined in a single action. The effect...is to preclude a party from withholding from the action for separate and later litigation a constituent component of the controversy even where that component is a separate and independently cognizable cause of action." <u>Stochastic Decisions, Inc. v. DiDomenico</u>, 995 F.2d 1158, 1170 (2d Cir. 1993)(citing to <u>Brown v. Brown</u>, 208 N.J. Super. 372 (App. Div. 1986)). The entire controversy doctrine seeks to "eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness." <u>Stochastic Decisions, Inc.</u>, 995 F. 2d at 1171 (citing to <u>Barres v. Holt, Rinehart and Winston, Inc.</u>, 74 N.J. 461, 465 (1977) (Schreiber, J., dissenting)).

The entire controversy doctrine is a matter of New Jersey substantive law. <u>Rycoline Products, Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir.1997) ("A federal court

hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an

aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C.

§ 1738 (1994).")  Notwithstanding this, GeoGlobal, through the filing of a lawsuit based on the

same facts and circumstances as are involved in the New Jersey Action, is attempting to

circumvent this requirement.  We submit that in such circumstances, GeoGlobal's lawsuit before

this Court should be dismissed.  To do otherwise would not only be inconsistent with the entire

controversy doctrine, but would also encourage "forum shopping."

> **C.   GeoGlobal's Lawsuit Should Also Be Dismissed Through A Straightforward Application Of The Well-Established "First Filed Rule"**

Lastly, it is undisputed that, prior to the filing of GeoGlobal's lawsuit, the New

Jersey Action was already pending.  The New Jersey Action, like the present action, involved the

termination of the relationship between the parties and the parties' conduct vis a vis the

customers of Peaktop Holdings.  By filing a whole new action in this Court, GeoGlobal has

caused the needless expenditure of limited judicial resources, increased Peaktop Holdings'

attorneys fees and costs, and duplicated matters that are already pending.  We submit that the

matter should be dismissed pursuant to the "first filed doctrine."

In this regard, as part of its general power to administer its docket, a district court

may stay or dismiss a suit that is duplicative of another federal court suit.  Curtis v. Citibank,

N.A., 226 F. 2d 133, 138 (2d Cir. 2000)(citing Colorado River Water Conservation Dist. v.

United States, 424 U.S. 800, 817 (1976)).  As such, "where there are two competing lawsuits, the

first suit should have priority, absent the showing of balance of convenience or special

circumstances giving priority to the second."  D.H. Blair & Co., Inc. v. Gottdeiner, 462 F. 3d 95,

106 (2d Cir. 2006) (citing First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir.

1989) (internal quotations, citation, and alterations omitted)).

"Where lawsuits concerning the same parties and issues are pending in two federal districts, the first-filed rule of the Second Circuit generally affords priority to the first-filed suit when courts choose which suit to permit to go forward." Ontel Products, Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (citing First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989); Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir. 1974).[4] "[T]he first-filed rule avoids duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." Ontel Products, Inc., 899 F. Supp. at 1150.

There is a strong presumption in favor of the forum of the first-filed suit. See New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991); Columbia Pictures Indus. v. Schneider, 435 F.Supp. 742, 747 (S.D.N.Y. 1977). The suit which is first filed should have priority, "absent a showing of a balance of convenience or special circumstances giving priority to the second suit." Ivy-Mar Co. v. Weber-Stephen Prods. Co., 1993 WL 535166, *1-2, 1993

---

[4] The first-filed rule also applies under New Jersey law. The general rule is that the "proper course under comity principles is not to exercise jurisdiction but to adhere to the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities." Yancoskie v. Delaware River Port Authority, 78 N.J. 321, 324 (1978); (see also Comment 5.3 to Rule 4:4-4 and Comment 2.7 to Rule 4:6-2. Indeed, comity "has become necessary and commonplace in a national economy for courts to interpret and enforce the laws of other jurisdictions." Cogen Techs. v. Boyce Engineering International, Inc., 241 N.J. Super. 268, 273 (App. Div.), certif. denied, 122 N.J. 358 (1990). Courts may refuse to proceed in a "vexatious" action focusing on a matter already being heard by a court of another jurisdiction. Exxon Research and Engineering, Co. v. Industrial Risk Insurers, 341 N.J. Super. 489, 504 (App. Div. 2001) (citing Cogen Techs. v. Boyce Engineering International, Inc., supra at 272). There is clear New Jersey precedent to enforce the first to file rule. Applestein v. United Board & Carton Corp., 35 N.J. 343, 346 (1961); American Employers' Ins. Co. v. Elf Atochem North America, Inc., 280 N.J. Super. 601 (App. Div. 1995); see also Comment 5.3 to Rule 4:4-4 and Comment 2.7 to Rule 4:6-2. "The basic principle that motivates us to avoid parallel litigation of previously instituted suits grows out of our respect for the laws of other jurisdictions and a policy favoring efficient use of judicial resources." Exxon Research and Engineering, Co. v. Industrial Risk Insurers, supra at 505 (citing to Bass v. DeVink, 336 N.J. Super. 450, 455 (App. Div. 2001).

U.S.Dist. LEXIS 17965, *2-3 (S.D.N.Y. Dec. 21, 1993) (citing Simmons, 878 F.2d at 79)).

However, the plaintiff bears the burden of demonstrating any special circumstances justifying an

exception to the rule.  Ivy-Mar Co., 1993 WL 535166 at *1.

"Because of the obvious difficulties of anticipating the claim or issue-preclusion

effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the

second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or

consolidate the two actions." Curtis v. Citibank, N.A., 226 F.2d 133, 138 (2d Cir. 2000) (citing

Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 186, 72 S.Ct. 219, 96 L.Ed.

200 (stay); Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 129-30 (2d Cir.

1999) (remanding for consideration of consolidation); First City, 878 F.2d at 80 (dismissal

without prejudice); National Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45-46 (2d Cir. 1961)

(parties enjoined).

Here, the undisputed facts demonstrate that Peaktop Holdings filed the New

Jersey Action two weeks prior to GeoGlobal's filing of the Second Lawsuit.  GeoGlobal has

obviously done so in an attempt to "forum shop."  GeoGlobal's filing of the Second Lawsuit is

improper and should be dismissed pursuant to the first filed rule.

## <u>CONCLUSION</u>

For the foregoing reasons, Peaktop Holdings respectfully requests that its motion to dismiss be granted and that GeoGlobal's lawsuit be dismissed in its entirety.

DATED:  November 20, 2006

Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation


BY: s/Willard C. Shih
      WILLARD C. SHIH

--and--

LAW OFFICES OF WEICHENG WANG

Attorneys for Peaktop Investment
Holdings(BVI) Limited

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
        and
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

| | | |
|---|---|---|
| IN RE PEAKTOP TECHNOLOGIES (USA), INC. SHAREHOLDER DERIVATIVE LITIGATION, | : | |
| | : | Civil Action No. 06 CV 8228 |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action |
| v. | : | |
| | : | **ORDER** |
| PEAKTOP INTERNATIONAL HOLDINGS LIMITED, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

-------------------------------------------------------X

THIS MATTER, having been brought to the Court on the application of

defendants (through Wilentz, Goldman & Spitzer, a Professional Corporation through Edward T.

Kole, Esq., appearing) to dismiss the complaint, on notice to plaintiff (through Drakeford &

Kane, LLC, Sean F. Kane, Esq., appearing), and the Court, having reviewed the parties' written

submissions and having heard the oral arguments of counsel, for the reasons stated in the Court's

opinion, dated _____, and for good cause having been shown,

IT IS ON THIS ___ day of December, 2006,

ORDERED THAT:

1. Defendants' motion to dismiss be and is hereby granted.

2. Plaintiff's complaint be and is dismissed in its entirety.


_____
HON. JED S. RAKOFF