UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

IN RE PEAKTOP TECHNOLOGIES : 
(USA), INC. SHAREHOLDER : 
DERIVATIVE LITIGATION, :
                                       :
            Plaintiff, :                Civil Action
                                       :
v. :            Case No. 06 CV 8228
                                       :
PEAKTOP INTERNATIONAL :
HOLDINGS LIMITED, et al., :     ORAL ARGUMENT REQUESTED
                                       :
            Defendants. :
                                       :

------------------------------------------------------X

## MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ 07095
(732) 636-8000
--and--
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Peaktop Investment
Holdings (B.V.I.) Limited

Of Counsel and On The Brief:
EDWARD T. KOLE
JAMES E. TONREY, JR.

On the Brief:
  KRISTEN BENEDETTO
  CHERYL CONNORS

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................1

POINT ONE...............................................................................................................4

      BECAUSE GEOGLOBAL PROFFERS NO LEGITIMATE REASON
      FOR INSTITUTING LITIGATION IN THIS COURT RATHER THAN
      ASSERTING ITS CLAIMS IN THE RELATED CASE ALREADY
      PENDING IN NEW JERSEY, IT IS READILY APPARENT THAT
      GEOGLOBAL SEEKS ONLY TO IMPROPERLY CIRCUMVENT
      PEAKTOP HOLDINGS' NEW JERSEY ACTION .........................................4

          A.    GeoGlobal's Claims Are Logically Related To The
                  Transaction At Issue In The New Jersey Action And Are
                  Thus Compulsory Counterclaims That Should Be Decided
                  In The New Jersey Action..............................................................4

          B.    GeoGlobal's Complaint Should Be Dismissed For The
                  Additional Reason That The New Jersey Action Was The
                  First-Filed Action...........................................................................9

          C.    New Jersey's Entire Controversy Doctrine Requires
                  GeoGlobal To Assert Its Claims In The New Jersey Action......................10

POINT TWO.............................................................................................................11

      THERE IS NO BASIS FOR THIS COURT TO EXERCISE SUBJECT
      MATTER JURISDICTION AND THE COMPLAINT SHOULD BE
      DISMISSED ...........................................................................................11

          A.    Irrespective Of The Alignment Of The Corporation, The
                  Undisputed Fact Is That GeoGlobal Is Not Diverse From
                  All Defendants And Therefore Complete Diversity Does
                  Not Exist;  Moreover, Complete Diversity Is Not Present
                  Even If GeoGlobal's Erroneous Argument Is Followed
                  Because Peaktop USA Has A Principal Place Of Business
                  In New Jersey...............................................................................12

          B.    Because Plaintiffs Have Failed To Plead Sufficient Facts
                  To Assert A Cause of Action Under The Lanham Act,
                  There Is No Federal Question Jurisdiction .................................................14

CONCLUSION.........................................................................................................18

TABLE OF AUTHORITIES

PAGE

**CASES**

ACTV, Inc. et al., v. The Walt Disney Co., et al.,
  2002 WL 922172 (No. 01 CIV 8402 (JSR) .......................................... 15, 16

Adam v. Jacobs,
  950 F.2d 89 (2d Cir. 1991) ....................................................................... 7

Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,
  820 F. Supp. 1072  n.2 (N.D. Ill. 1993) ................................................ 16, 17

Carrasco v. New York City Off-Track Betting Corp.,
  858 F. Supp. 28 (S.D.N.Y. 1994) ........................................................... 17

Critical-Vac Filtration Corp. v. Minuteman International, Inc.,
  233 F.3d 697 (2d Cir. 2000) ..................................................................... 8

Curtis v. Citibank, N.A.,
  226 F.2d 133  (2d Cir. 2000) .................................................................... 9

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
  160 F.3d 925  (2d Cir. 1998) .................................................................. 13

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,
  314 F.3d 48  (2d Cir. 2002) ........................................................... 14, 15, 17

Gmurzynska v. Hutton,
  355 F.3d 206 (2d Cir. 2004) ............................................................. 14, 15

Goldsmith v. Polygram Diversified Ventures, Inc.,
  1995 WL 614560 *7 (S.D.N.Y. 1995) ................................................. 15, 16

Gordon & Breach Science Publishers S.A. v. American Institute of Physics,
  859 F. Supp. 1521 S.D.N.Y. 1994) ..................................................... 14, 15

Green v. Clark,
  173 F. Supp. 233 (S.D.N.Y. 1959) ......................................................... 12

Grupke v. Linda Lori Sportswear, Inc.,
  174 F.R.D. 15 (E.D.N.Y. 1997) ................................................................ 9

Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654  (S.D.N.Y. 1997) .............. 5, 10

Marcus v. AT&T Corp.,
  138 F.3d 46 (2d Cir. 1998) ..................................................................... 17

**TABLE OF AUTHORITIES (cont'd)**

**PAGE**

Moore v. New York Cotton Exchange,
   270 U.S. 593 (1926) ............................................................................ 7

Oliver v. Ambrose,
   152 N.J. 383, 705 A.2d 742 (1998) ............................................ 11

Play-by-Play Toys & Novelties,
   208 F.3d 368 (2d Cir. 2000) ...................................................... 15

Purgess v. Sharrock,
   33 F.3d 134 (2d Cir. 1994) ........................................................ 17

Steele v. Anderson,
   2004 U.S. Dist. LEXIS 136, *5-*6 (N.D.N.Y. Jan. 8, 2006) ................ 12

Stone v. Merritt-Chapman & Scott Corp.,
   156 F. Supp. 315 (S.D.N.Y. 1957) ............................................ 12

The Haytian Republic,
   154 U.S. 118 (1894) .................................................................. 5

Tucker v. Nat'l Linen Serv. Corp.,
   92 F. Supp. 502 (N.D. Ga. 1950)............................................ 12

United States v. Aquavella,
   615 F.2d 12 (2d Cir. 1980) ...................................................... 7, 8

White Plains Towing Corp. v. Patterson,
   991 F.2d 1049 (2d Cir. 1993) .................................................. 14

**RULES**

Fed. R. Civ. P. 13(a) ...................................................................... 7

Rule 13(a)............................................................................ 7, 8, 9

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil
   2d §1410, at 59 (1990)............................................................ 7

Wright, Miller & Kane, supra, Federal Practice and Procedure Civil 2d §1410, at 30 ................ 9

## PRELIMINARY STATEMENT

Defendants Peaktop Investment Holdings (B.V.I.) Limited ("Peaktop Holdings"), SRG Group, Chun Kuei Lin, Vincent Wei Hung Lin, Mike Wu, and Chun-Hui Huang ("Defendants") submit this brief, together with the Reply Declaration of James E. Tonrey, Jr., dated December 8, 2006 ("Tonrey Reply Decl.") in further support of their motion to dismiss plaintiff's complaint.

Plaintiff's opposition papers are nothing short of remarkable. Indeed, nowhere in plaintiff's papers do they deny the existence of the New Jersey Action or that it was filed two weeks prior to the present action. That said, plaintiff here implicitly acknowledges that it knowingly and intentionally filed this subsequent action some two weeks after the initiation of the New Jersey Action, and with no mention or disclosure of that action in its complaint in this action.[1]

Notwithstanding that, plaintiff clings to essentially two arguments: that the defendants in this case are unrelated to the New Jersey action and that the two matters are unrelated, neither of which is true. Indeed, plaintiff contends that the plaintiff and defendant in the two actions are different and that none of the defendants in this case are parties to the New Jersey action:

> By contrast in this case, not only are the Plaintiff and the
> Defendants in the District of New Jersey action different, but none
> of the defendants involved herein is even a party to the
> "purportedly" first-filed action in New Jersey. (Pb. at 14.)

---

[1] Nor does plaintiff mention the fact that, subsequent to their filing of the present complaint, GeoGlobal filed yet another lawsuit against Peaktop Holdings, but this time in New Jersey State Court, again based on allegations involving the matters already at issue between the parties in the New Jersey Federal Lawsuit. See Tonrey Reply Decl., at Exh. A (GeoGlobal's Lawsuit filed in the New Jersey Superior Court, dated November 6, 2006).)

Nothing, however, could be further from the truth. Indeed, the plaintiff in the New Jersey action is the primary defendant in the present action, and the majority of the other defendants in this action are board members of the primary defendant and Peaktop USA, as set forth in plaintiff's own complaint herein.

No matter how plaintiff tries to spin it, the facts at issue in the New Jersey action and this action are inextricably woven together. As explained in the New Jersey Action, Peaktop Holdings and GeoGlobal are shareholders in Peaktop USA and had an agreement pursuant to which Peaktop Holdings manufactured and produced products and GeoGlobal, through Peaktop USA, marketed and sold the products. As further described in the aforesaid complaint, GeoGlobal and Peaktop USA misappropriated confidential and proprietary information from Peaktop Holdings, including designs, prototypes, technical drawings, specifications and catalogs for Peaktop Holdings' products, and used such information as a "blueprint" for a third party to manufacture the products. GeoGlobal and Peaktop Holdings then took orders from customers for sales to be made on behalf of Peaktop USA with product manufactured by Peaktop Holdings, using Peaktop Holdings' catalogs, prototypes, samples, drawings, specifications and the like, but rather than submitting the order to Peaktop Holdings, GeoGlobal and Peaktop USA filled these orders with products made by its third party manufacturer and thereby cut Peaktop Holdings and its subsidiaries out of the process entirely. As a result of GeoGlobal and Peaktop USA's wrongful conduct, as set forth in the New Jersey Action, a letter was sent to the purchasers of Peaktop Holdings' products advising them of the parties' dispute. It is that letter that forms the crux of plaintiff's claims here.

Given that the present lawsuit is but a component of the overall controversy between the parties, and already the subject of the New Jersey Action at the time this action was

filed, plaintiff's claims herein are barred by the compulsory counterclaim rule, the first to file rule and the entire controversy doctrine, as a matter of law.

Lastly, plaintiff's attempt to survive the complaint's jurisdictional defects is equally unavailing. Plaintiff not only fails to address the case-law on point demonstrating that it is GeoGlobal's citizenship -- not Peaktop USA's -- that is considered for purposes of the diversity of citizenship analysis, but also concedes, as it must, that GeoGlobal's citizenship is not diverse from that of defendants -- demonstrating, ipso facto, that diversity of citizenship jurisdiction surely does not exist here. Plaintiff also ignores the fact that complete diversity is non-existent, even under its own analysis, given that Peaktop USA, by plaintiff's own admission, has a principal place of business in New Jersey (the same state of citizenship as defendants). The fact of the matter, largely conceded in plaintiff's papers, is that there is no diversity of citizenship jurisdiction in this case.

Beyond this, plaintiff also concedes in its papers the very facts demonstrating that the Lanham Act claim is no more than a state law claim masquerading as a Lanham Act claim and that the claim thus cannot serve as a basis for federal question jurisdiction. While acknowledging that its claim is based on the one September 14, 2006 letter alleged in its complaint, plaintiff relies on fanciful theories of "commercial speech" that do not even arise under the Lanham Act to try and save its complaint. However, as the relevant caselaw establishes, and plaintiff is unable to controvert, it is improper where, as here, a party takes what is essentially a state law tortious interference claim and tries to package it as a federal Lanham Act claim. The fact of the matter, ignored by plaintiff is that the one communication plaintiff puts in issue here does not rise to the level of commercial dissemination and "organized campaign" needed to state an actionable Lanham Act claim.

In sum, plaintiff's opposition papers further confirm that there is no federal subject matter jurisdiction for this lawsuit and, to the extent that plaintiff has any cognizable claims, that they should have been filed in the pending New Jersey Action. [2]

## ARGUMENT

## POINT ONE

**BECAUSE GEOGLOBAL PROFFERS NO LEGITIMATE REASON FOR INSTITUTING LITIGATION IN THIS COURT RATHER THAN ASSERTING ITS CLAIMS IN THE RELATED CASE ALREADY PENDING IN NEW JERSEY, IT IS READILY APPARENT THAT GEOGLOBAL SEEKS ONLY TO IMPROPERLY CIRCUMVENT PEAKTOP HOLDINGS' NEW JERSEY ACTION**

GeoGlobal's attempt to portray the instant litigation as one that is wholly unrelated to the New Jersey Action is unavailing, as GeoGlobal fails to demonstrate that the facts and matters at issue in this litigation are distinct from those facts and issues raised in the New Jersey Action. Given the substantial similarity of the two cases, it is readily apparent that this case, filed two weeks _after_ Peaktop Holdings filed its lawsuit in New Jersey, is nothing more than a retaliatory action, seeking to litigate the very same issues raised in the New Jersey Action in a different forum.

**A.    GeoGlobal's Claims Are Logically Related To The Transaction At Issue In The New Jersey Action And Are Thus Compulsory Counterclaims That Should Be Decided In The New Jersey Action**

GeoGlobal's principal argument with regard to its failure to assert its claims as compulsory counterclaims in the New Jersey Action is that "none of the entities or individuals

---

[2] Plaintiff's comment on page 1 of its brief that the complaint in the New Jersey Action is not before the Court is not true. While the Tonrey Declaration inadvertently states that the attached complaint was from "the above referenced action (referring to the New York Action filed by (cont'd. on next page...)

that have been named as defendants in the instant action are even named as parties in the DNJ

Action." GeoGlobal's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at

11. This assertion is simply untrue. In fact, the <u>principal defendant</u> in the Second Action,

Peaktop Holdings, is the plaintiff in the New Jersey Action. Moreover, virtually all of the

remaining defendants in the Second Action are members of the Board of Directors of Peaktop

Holdings and Peaktop USA (which is a defendant in the New Jersey Action). (See GeoGlobal's

Complaint, at 1 -- 4; Tonrey Decl. at Exh. A at 3, ¶ 3).) Indeed, these individual defendants are

only named in this litigation because of their status as directors of Peaktop USA, a party in both

litigations.[3] Thus, while the parties in both the New Jersey Action and the Second Action are not

identical, both actions are nonetheless duplicative because the parties in each action represent the

same interests. Cf. <u>Howard v. Klynveld Peat Marwick Goerdeler</u>, 977 F. Supp. 654, 664

(S.D.N.Y. 1997) (finding second suit against partners of general partnership duplicative of

earlier-filed suit against partnership, noting that "For a second action to be duplicative, it is not

necessary that the parties be identical. Rather, if the parties 'represent the same interests' the

court may determine the second action to be duplicative.") (quoting <u>The Haytian Republic</u>, 154

U.S. 118, 124 (1894)).)

---

GeoGlobal), the fact of the matter is that, as demonstrated by the attachment itself, the attached
complaint is from the New Jersey Action.

[3] Given this, GeoGlobal's argument that the defendants in this litigation are subject to the
jurisdiction of only this Court because of their involvement as directors of Peaktop USA is
specious. As Peaktop USA is also a party to the New Jersey Action, any cognizable claims
against the directors of Peaktop USA in this litigation, to the extent any exist, would similarly
provide the United States District Court for the District of New Jersey with jurisdiction over
these defendants. Moreover, plaintiff's argument ignores the fact that Peaktop USA has a
principal place of business located in New Jersey, as plaintiff has admitted in its complaint in yet
another complaint it filed in New Jersey State court. (Tonrey Reply Decl., at Exh. A.)

Moreover, GeoGlobal's argument that the claims in this case do not arise out of the same "transaction or occurrence" is spurious. No matter how it is viewed, the crux of the parties' dispute in both this litigation and the New Jersey Action is the termination of the parties' marketing/distribution relationship, and the parties' subsequent conduct with respect to pre-existing customers. As described in Peaktop Holdings' complaint in the New Jersey Action, GeoGlobal and Peaktop USA, upon information and belief, misappropriated confidential and proprietary information from Peaktop Holdings, including designs, prototypes, technical drawings, specifications, and catalogs for Peaktop Holdings' products, and used such information as a "blueprint" for a third party to manufacture the products. GeoGlobal and Peaktop USA then took orders from Peaktop Holdings' customers for sales to be made on behalf of Peaktop USA with product manufactured by Peaktop Holdings using Peaktop Holdings' catalogs, prototypes, samples, drawings, specifications and the like, but rather than submitting the order to Peaktop Holdings, GeoGlobal and Peaktop USA filled these orders with products made by its third party manufacturer and thereby cut Peaktop Holdings and its subsidiaries out of the process entirely.

In the complaint filed by GeoGlobal in this litigation, GeoGlobal complains of the actions purportedly taken by agents of Peaktop Holdings once Peaktop Holdings learned of the aforesaid scheme. Specifically, GeoGlobal alleges that Peaktop Holdings sent a letter, dated September 14, 2006, to its customers advising that GeoGlobal and Peaktop USA are separate entities and that Peaktop Holdings' customers should place orders directly with Peaktop Holdings through its authorized representatives. It is this letter that forms the basis of all eleven counts of GeoGlobal's complaint.

In light of the foregoing, the claims asserted in this lawsuit are so related to the claims asserted in the New Jersey Action that, pursuant to Fed. R. Civ. P. 13(a), they must be raised as counterclaims in the first-filed New Jersey litigation. While GeoGlobal points to minute differences between the complaints filed in each action, the relevant inquiry in determining whether a claim is a compulsory counterclaim is *not* whether the cases are identical in all respects. Rather, as the Second Circuit has explained, pursuant to Rule 13(a), so long as a "logical relationship" exists between the claims, and the "essential facts" of each claim are "so logically connected" that resolving all issues in one lawsuit promotes "judicial economy and fairness," then the claim constitutes a compulsory counterclaim. Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (citing United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1980)). Indeed, as even GeoGlobal notes in its brief:

> The Second Circuit has adopted the "logical relationship" test for determining whether counterclaims are compulsory. It has stated that the "transaction or occurrence" language of Rule 13(a) **requires "not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them."**

GeoGlobal's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 12 (emphasis supplied) (citations omitted); see also Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil 2d §1410, at 59 (1990) (in "leading Supreme Court decision" on compulsory counterclaims, Moore v. New York Cotton Exchange, 270 U.S. 593 (1926), Supreme Court found counterclaim to be compulsory, even though "neither the facts nor the issues involved in the[] two claims were identical," because "'[t]o hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim'").

Here, the claims asserted by GeoGlobal in the Second Action satisfy the "logical relationship" test and thus must be asserted as compulsory counterclaims in the New Jersey Action. Notably, while GeoGlobal contends that the allegations in the two actions "arise out of different transactions and occurrences," it fails to identify a single separate transaction that would remove its claims from the realm of Rule 13(a). Rather, GeoGlobal cites only to the September 14, 2006 letter as a basis for instituting a separate action, but its reliance on this letter is wholly misplaced. As set forth above, the letter is, in fact, based upon -- and in direct response to -- the misconduct by GeoGlobal and Peaktop USA that is at the very heart of the claims in the New Jersey Action. Thus, the facts and circumstances in the Second Lawsuit not only have a "logical relationship" to the claims in the New Jersey Action, but derive from and are inextricably intertwined with the core set of facts underlying the New Jersey Action.

Given this, GeoGlobal's further argument that the causes of action and relief sought in the two lawsuits are not identical is unavailing. As set forth above, the only relevant factor in determining whether a claim is a compulsory counterclaim is whether the claims arise out of the same "transaction or occurrence." In this regard, the focus of the inquiry is the set of facts and issues that underlie each party's claim, not the causes of action that arise therefrom. Courts frequently hold that counterclaims -- albeit not identical to the original claims -- still constitute compulsory counterclaims that must be raised in the initial litigation. See, e.g., Critical-Vac Filtration Corp. v. Minuteman International, Inc., 233 F.3d 697 (2d Cir. 2000) (upholding dismissal of claim for antitrust because claim should have been asserted as compulsory counterclaim in previous suit for patent infringement); United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979) (affirming dismissal of suit by government to recover alleged overpayments made to nursing home and finding claims should have been adjudicated with

defendant's claims in separate action for injunction and monetary damages); <u>Grupke v. Linda Lori Sportswear, Inc.</u>, 174 F.R.D. 15 (E.D.N.Y. 1997) (claims for unfair competition and tortious interference with business relation were compulsory counterclaims in suit for copyright infringement, trademark infringement, and unfair competition).  Indeed, "[t]he very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts[.]"  Wright, Miller & Kane, <u>supra</u>, Federal Practice and Procedure Civil 2d §1410, at 30.

As set forth above, the claims asserted in the Second Action have a "logical relationship" to the New Jersey Action, and thus, regardless of the causes of action alleged in each lawsuit, satisfy the "transaction or occurrence" test of Rule 13(a).  Because GeoGlobal chose to improperly invoke the jurisdiction of this court when its claims should have properly been raised as counterclaims in the New Jersey Action, GeoGlobal's complaint in this forum should be dismissed.

**B.    GeoGlobal's Complaint Should Be Dismissed For The Additional Reason That The New Jersey Action Was The First-Filed Action**

GeoGlobal concedes the essential principle that where two proceedings are pending simultaneously, the first filed action takes priority over the latter action absent special circumstances.  <u>See</u> <u>Curtis v. Citibank, N.A.</u>, 226 F.2d 133, 138 (2d Cir. 2000).  Furthermore, GeoGlobal does not dispute that it received the complaint in the New Jersey Action before it chose to file suit in this forum, and thus consciously brought this action with full knowledge of the existence of the first-filed action.

In support of its argument that the first-filed rule does not apply under the circumstances presented here, GeoGlobal again turns to its baseless assertion that the parties in the two lawsuits are "markedly different."  This argument fails for two reasons.  First, as described <u>supra</u>, the parties in the two suits are not different because the same interests are

represented in both suits.  Moreover, even under the case law cited by GeoGlobal, the parties

need not be identical under the first-filed rule.  See Howard, 977 F. Supp. at 664 ("For a second

action to be duplicative, it is not necessary that the parties be identical.").   Because the relevant

parties in both actions represent the same interests, the latter suit is clearly duplicative of the first

and should be dismissed.

                 Furthermore, the issues in the two lawsuits are the same.  Both suits will require

the courts to determine whether Peaktop USA and GeoGlobal wrongfully misappropriated

Peaktop Holdings' confidential and proprietary information; whether Peaktop USA and

GeoGlobal provided such information to third party contractors for manufacture and sold such

products to customers, thereby cutting Peaktop Holdings out of the process entirely; whether, as

a result of such conduct by Peaktop USA and GeoGlobal, Peaktop Holdings sent a letter to its

customers in the United States advising that Peaktop USA and GeoGlobal are separate entities

and that all orders should be placed directly through Peaktop Holdings' authorized

representatives; and, to the extent such letter was sent, whether such conduct was wrongful given

the aforesaid scheme.  All of these derive from GeoGlobal's wrongful conduct, and, as such, are

so intertwined that they cannot be disposed of in two separate suits.  Accordingly, the latter filed

suit – that is, the Second Action – is appropriate for dismissal under the well-established

principles of the first-filed rule.

      **C.**    **New Jersey's Entire Controversy Doctrine Requires GeoGlobal**
            **To Assert Its Claims In The New Jersey Action**

                 GeoGlobal's argument that Peaktop Holdings is attempting to bar its claims

against Peaktop Holdings is completely misplaced.  Peaktop Holdings has not argued that

GeoGlobal's claims against Peaktop Holdings are precluded altogether; rather, Peaktop Holdings

argues only that, as a matter of New Jersey substantive law, such claims must be brought in one

action in New Jersey. As GeoGlobal aptly notes, "under New Jersey law, 'the entire controversy

doctrine encompasses 'virtually all clauses, claims and defenses relating to a controversy' and

requires, 'at a minimum,' that all parties to a suit bring all affirmative claims, counterclaims,

cross-claims, and defenses out of the underlying controversy.'" GeoGlobal's Memorandum of

Law in Opposition to Defendants' Motion to Dismiss, at 15 (quoting Oliver v. Ambrose, 152

N.J. 383, 705 A.2d 742, 747 (1998)). The Entire Controversy Doctrine thus requires any claims

by GeoGlobal that are based on the same facts and circumstances as are involved in the New

Jersey Action, to the extent any exist, to be brought in the New Jersey Action rather than in a

separate action elsewhere. Because GeoGlobal's claims here are inextricably related to the New

Jersey Action, as described above, they must be raised in the New Jersey Action as a matter of

New Jersey substantive law. Accordingly, GeoGlobal's claims in this litigation should be

dismissed.

## POINT TWO

### THERE IS NO BASIS FOR THIS COURT TO EXERCISE SUBJECT MATTER JURISDICTION AND THE COMPLAINT SHOULD BE DISMISSED

The lack of subject matter jurisdiction in this case is simply stated and clear on

the face of plaintiff's complaint. First, there is no diversity jurisdiction in this case because there

is not complete diversity of citizenship between plaintiff and defendants. In this regard, not only

is complete diversity lacking between GeoGlobal and defendants, as stated in defendants'

motion, but, even under plaintiff's theory that Peaktop USA is the party whose citizenship

matters, complete diversity is still lacking because Peaktop USA has a principal place of

business in New Jersey, the same State of residence of certain defendants. (Tonrey Reply Decl.

at 5, ¶ 12.)

Second, the only federal claim in the complaint purportedly alleged under the

Lanham Act is not sufficiently alleged and is deficient as a matter of law. Without this federal

claim, there is no supplemental jurisdiction over the state law claims in this case.

> **A.  Irrespective Of The Alignment Of The Corporation, The Undisputed Fact Is That GeoGlobal Is Not Diverse From All Defendants And Therefore Complete Diversity Does Not Exist; Moreover, Complete Diversity Is Not Present Even If GeoGlobal's Erroneous Argument Is Followed Because Peaktop USA Has A Principal Place Of Business In New Jersey**

It is undisputed that complete diversity does not exist among all the parties, and

therefore, this Court must decline to exercise diversity jurisdiction over this matter. Plaintiff

does not challenge the cases cited by defendants and fails to include any discussion of the crucial

issue with respect to diversity jurisdiction, namely the lack of complete diversity in this case. As

plaintiff's silence on the issue confirms, the case law explicitly requires the Court to consider the

plaintiff stockholder's citizenship in analyzing diversity jurisdiction in the context of a

shareholder derivative action. See, e.g., Stone v. Merritt-Chapman & Scott Corp., 156 F. Supp.

315 (S.D.N.Y. 1957) (holding that plaintiff stockholder's citizenship destroyed diversity in

stockholder's derivative action); Tucker v. Nat'l Linen Serv. Corp., 92 F. Supp. 502, 505 (N.D.

Ga. 1950) (rejecting, in shareholder derivative action, plaintiff shareholder's argument that

corporation was the only party plaintiff for purposes of jurisdiction and determining that

"plaintiff, in whatever capacity she may appear, is a party here and cannot be treated as absent or

nonexistent for jurisdictional purposes"), aff'd, 188 F.2d 265 (5th Cir.), cert. denied, 342 U.S.

828 (1951); Steele v. Anderson, 2004 U.S. Dist. LEXIS 136, *5-*6 (N.D.N.Y. Jan. 8, 2006)

(declining to exercise jurisdiction over shareholder derivative action because plaintiff

shareholders were not diverse from all defendants); see generally Green v. Clark, 173 F. Supp.

233, 236-37 (S.D.N.Y. 1959) (remarking that if either nominal plaintiff or beneficial plaintiff in

shareholder derivative action were citizens of New York (as was defendant) diversity would be destroyed).

Plaintiff's opposition entirely ignores these cases, which are directly on point.   It is no surprise that plaintiff attempts to divert the Court's attention to cases dealing with the alignment of the corporation.  For purposes of this motion, the alignment of Peaktop USA is irrelevant as defendants did not argue that Peaktop USA's citizenship affected diversity in any way, shape, or form.  Rather, defendants' brief aptly pointed out that GeoGlobal's citizenship could not be ignored for purposes of diversity jurisdiction as made clear in the decisional law referenced above.  Plaintiff simply has no response to the case law directly on point and thus discusses case law that is entirely irrelevant and not in dispute here.  In any event, plaintiff's own argument that the citizenship of Peaktop USA should be considered shoots plaintiff in the foot -- the undisputed facts, as disclosed in plaintiff's own complaint in the subsequently-filed New Jersey State Court action demonstrates that Peaktop USA has a principal place of business in New Jersey, the same State of which defendants are citizens, thus destroying complete diversity even under plaintiff's own mistaken theory.

The undisputed facts, as revealed on the face of the complaint, are that GeoGlobal, the plaintiff-shareholder in this derivative suit (as well as Peaktop USA), is a resident of the State of New Jersey as is defendant SRG Group.  Thus, there is no complete diversity among all the plaintiffs and the defendants, see E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998), and the Court does not have diversity of citizenship subject matter jurisdiction.

**B.    Because Plaintiffs Have Failed To Plead Sufficient Facts To
Assert A Cause of Action Under The Lanham Act, There Is No
Federal Question Jurisdiction**

Plaintiff relies upon Gordon & Breach Science Publishers S.A. v. American
Institute of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994), which sets forth the
requirements for a representation to constitute "commercial advertising or promotion" under
Section 43(a)(1)(B) of the Lanham Act, specifically: (1) commercial speech; (2) by a defendant
who in is commercial competition with plaintiff; (3) for the purpose of influencing consumers to
buy defendant's goods or services; and (4) which must be disseminated sufficiently to the
relevant purchasing public to constitute "advertising" or "promotion" within that industry.[4]
These requirements, which plaintiff points out, are simply not satisfied given the facts alleged in
plaintiff's complaint.  Contrary to plaintiff's assertions that there is a cognizable Lanham Act
claim, the reality is that plaintiff's allegations are state law claims wrapped in a Lanham Act
package for the purpose of obtaining federal question jurisdiction.  Once that package is
unwrapped, it is clear that the allegations in the complaint stretch beyond reason the meaning of
"commercial advertising or promotion" as required for a Lanham Act claim.

With respect to the commercial speech element, commercial speech has been
defined by the United States Court of Appeals for the Second Circuit as "'speech which does no
more than propose a commercial transaction.'" Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d

---

[4] It bears mentioning that the United States Court of Appeals for the Second Circuit has not
adopted three of the above requirements but has expressed no opinion with respect to the second
prong of the test expressed in Gordon.  See Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir.
2004); Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir. 2002).

Cir. 2004).[5] As plaintiff's complaint demonstrates, the September 14, 2006 letter contained

information, which apprised customers that Peaktop USA "'will no longer represent us in the

U.S. market effective September 1, 2005' and, therefore is not authorized to sell the products at

issue herein; that '[a]ll USA domestic inquiries should be directed to Mr. Vincent Lin, President

of [SRG];' and that Jeffrey Robbins 'no longer serves as the President of Peaktop Technologies

(USA) Hong Kong Limited.'" Compl. 20, ¶ 77. This information, as described in plaintiff's

complaint, does not propose a commercial transaction but merely informs customers about a

change in the corporate structure and Peaktop Holdings' relationship with another entity. Such

representations do not fall within the ambit of the Lanham Act, as they are clearly not

commercial speech. See Gmurzynska, 355 F.3d at 210 (granting motion to dismiss Lanham Act

claim because complaint merely alleged that representations concerned existence of a dispute

between the parties and was therefore not commercial speech).

      Likewise, the complaint does not allege sufficient facts to support a Lanham Act

claim given that it references representations in one letter, which does not amount to sufficient

dissemination to the relevant purchasing public. See Play-by-Play Toys & Novelties, 208 F.3d

368, 383 (2d Cir. 2000), Gordon, 859 F. Supp. at 1535-36; ACTV, Inc. et al., v. The Walt Disney

Co., et al., 2002 WL 922172 (No. 01 CIV 8402 (JSR), May 7, 2002), at *2; Goldsmith v.

Polygram Diversified Ventures, Inc., 1995 WL 614560 *7 (S.D.N.Y. 1995). To assert a cause of

action under the Lanham Act, plaintiff must show that defendants engaged in commercial

---

[5] The case relied upon by plaintiff for the proposition that commercial speech is "speech that
merely proposes commercial transactions," White Plains Towing Corp. v. Patterson, 991 F.2d
1049, 1052, 1058 (2d Cir. 1993), is not a Lanham Act case but rather a claim based on the First
Amendment and Due Process Clause of the Fourteenth Amendment to the United States
Constitution. (Pb7.) Thus, this definition is inaccurate given the Second Circuit's discussion of
commercial speech in Gmurzynska in the context of a Lanham Act claim.

advertising or promotional activity "designed to disseminate information to the public." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir. 2002). As the Court of Appeals for the Second Circuit has made clear, "the touchstone of whether a defendant's actions may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." Id. To allege such an organized campaign, there must be an allegation of "widespread dissemination within the relevant industry." Id. Businesses harmed by isolated statements do not have redress under the Lanham Act, and thus must seek relief under state law causes of action. Id. (citing Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc., 820 F. Supp. 1072, 1078 n.2 (N.D. Ill. 1993)).

There is simply no allegation of an "organized campaign" of advertising or promotion but rather an allegation that one letter distributed to certain customers constituted "commercial advertising or promotion" in violation of the Lanham Act. Like the correspondence in ACTV, the September 14, 2006 letter fails to meet the Lanham Act standards as a matter of law. To characterize the letter here as commercial advertising or promotion stretches the Act's reach beyond its intended scope as one letter does not satisfy the dissemination prong. See ACTV, 2002 WL922172 at *2 (finding that single instance of correspondence would stretch beyond reason the meaning of "advertising or promotion); Goldsmith, 1995 WL 614560 at *7 ("A single communication, without any allegation that it was part of a pattern or campaign to penetrate more of the relevant market is insufficient."). This analysis does not invoke questions of fact, as plaintiff argues, but more accurately looks only to the facts as alleged in the complaint. The very language in the complaint does not give rise to a Lanham Act cause of action because

the September 14, 2006 letter falls far short of an organized campaign or a sufficient dissemination to the relevant industry.

In essence, plaintiff's claims are state law claims couched in Lanham Act language but insufficient and inappropriate under the Lanham Act framework.  Plaintiffs do not dispute that courts have expressed reluctance in broadening the scope of the Lanham Act to reach claims that are otherwise actionable under state-law unfair competition principles.  See Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc., 820 F. Supp. 1072 (N.D. Ill. 1993) (cited in Fashion Boutique, 314 F.3d at 57).  The alleged conduct in this case simply does not fit into the Lanham Act requirements and thus it is clear that plaintiff's allegations are, in substance, state-law unfair competition claims disguised as a Lanham Act cause of action.

In short, because commercial speech is "'speech which does no more than propose a commercial transaction," the September 14, 2006 letter cannot be characterized as commercial speech as it was intended to inform its customers of its relationship with another entity not to propose a commercial transaction.  Moreover, the decisional law makes clear that one letter cannot constitute sufficient dissemination for widespread dissemination as a matter of law.  Given the facts as alleged in plaintiff's complaint, there is no cognizable Lanham Act claim, and thus, there is no federal question jurisdiction in this matter.

Lastly, because there is no diversity jurisdiction or federal question jurisdiction as discussed above, there is simply no basis for supplemental jurisdiction for plaintiff's state law claims as there is no underlying cognizable federal claim.  See Carrasco v. New York City Off-Track Betting Corp., 858 F. Supp. 28 (S.D.N.Y. 1994); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) (stating that "where the federal claims are dismissed before trial, the state [law] claims should be dismissed as well" (citing Purgess v. Sharrock, 33 F.3d 134, 138 (2d

Cir. 1994))). Given the lack of diversity jurisdiction and the insufficiency of the allegations for

the Lanham Act claim, this Court should decline to exercise subject matter jurisdiction in this

action and should therefore dismiss the complaint in its entirety.

## CONCLUSION

For the foregoing reasons, Peaktop Holdings respectfully requests that its motion to

dismiss be granted and that GeoGlobal's lawsuit be dismissed in its entirety.

DATED:  December 8, 2006                     Respectfully submitted,

                                            WILENTZ, GOLDMAN & SPITZER
                                            A Professional Corporation


                                            BY:____s/Willard C. Shih_____
                                                 WILLARD C. SHIH

                                                    --and--

                                            LAW OFFICES OF WEICHENG WANG

                                            Attorneys for Peaktop Investment
                                            Holdings(BVI) Limited

WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
      and
LAW OFFICES OF WEICHENG WANG
197 Route 18, Suite 309
East Brunswick, New Jersey 08816
(732) 418-8865
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X
IN RE PEAKTOP TECHNOLOGIES (USA),   :
INC. SHAREHOLDER DERIVATIVE      :
LITIGATION,                        :   Civil Action No. 06 CV 8228
                                    :
         Plaintiffs,          :
                                      :         Civil Action
v.                                 :
                                    :   **REPLY DECLARATION OF**
PEAKTOP INTERNATIONAL HOLDINGS :   **JAMES E. TONREY, JR.**
LIMITED, et al.,                   :
                                    :
         Defendants.         :
                                    :
------------------------------------------------------X

JAMES E. TONREY, JR., being duly sworn, deposes and says:

1.     I am an attorney at law admitted to practice in the State of New York, and

counsel to the law firm of Wilentz, Goldman & Spitzer, a Professional Corporation, attorneys for

defendants in the above-captioned matter.  I am submitting this declaration in further support of

defendants' motion to dismiss the complaint.

2.    Attached hereto as Exhibit A is a true and correct copy of a complaint captioned "GeoGlobal Partners, LLC and Best Eagle Group Limited v. Peaktop Internatioanl Holdings Limited, et al." pending in the Superior Court of New Jersey, Chancery Division, Hudson County, docket number C-200-06.

DATED:  December 8, 2006

_____
JAMES E. TONREY, JR.

NOV-08-2006 14:51 FROM:BOURNE NOLL KEN-ON   908 277 8609        TO:Guaranteed Storoera  P.5 36

**BOURNE NOLL & KENYON, P.A.**
382 Springfield Avenue
P.O. Box 690
Summit, New Jersey 07902-0690
(908) 277-2200
Attorneys for Plaintiffs, GeoGlobal Partners, LLC, and
Best Eagle Group Limited

| | |
|---|---|
| GEOGLOBAL PARTNERS, LLC; and BEST EAGLE GROUP LIMITED; | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: HUDSON COUNTY |
| Plaintiffs, | |
| v. | DOCKET NO.: C-200-06 |
| | CIVIL ACTION |
| PEAKTOP INTERNATIONAL HOLDINGS LIMITED; PEAKTOP INVESTMENT HOLDINGS LIMITED; SILK ROAD GIFTS, INC. (a.k.a. "SILK ROAD GROUP"); LIN CHUN KUEI (a.k.a. "C.K. Lin"), individually, and as CEO and Chairman of Peaktop International Holdings Limited, and as a Director and Officer of Peaktop Technologies (USA) Hong Kong Limited; LIN WEI HUNG (a.k.a. "Vincent Lin"), individually, and as a Director and Officer of Silk Road Gifts, Inc.; LI CHIEN KUAN (a.k.a. "Spencer Lee"), individually, and as a Director of Peaktop Technologies (USA) Hong Kong Limited; TONG CHAK WAI (a.k.a. "Wilson Tong"), individually, and as an Officer of Peaktop International Holdings Limited, and as an Officer of Peaktop Investment Holdings Limited, and as an Officer of Peaktop Technologies (USA) Hong Kong Limited; DICK ARNOLD, an individual; STAN ANDERSON & ASSOCIATES; J. DOE 1-5 (names being fictitious); and ABC CORP. 1-5 (names being fictitious), | COMPLAINT |
| Defendants. | |

Plaintiffs, GeoGlobal Partners. LLC ("GGP"), and Best Eagle Group Limited ("Best Eagle"),

NO 1-08-2006 14:51 FROM:BOUPNE NOLL KEN OF:   908 277 8808        TO:Guaranteed Suppeers  P.T 26

Eagle"), by way of Verified Complaint against the Defendants herein, say:

## FACTS COMMON TO ALL COUNTS

### Parties and Jurisdiction

1.      GGP is a limited liability company organized under the laws of the State of New Jersey, having its principal place of business located at 111 Corporate Boulevard, Suite H, South Plainfield, Middlesex County, New Jersey 07080.  GGP is owned in equal shares by its three Members, Jeffrey Robbins, Mark Wilson, and Gregory Schutte.  GGP designs, engineers, manufactures, and imports outdoor living products which are offered for sale through major retailers in the United States.

2.      Best Eagle is a corporation organized under the laws of the British Virgin Islands, having its principal place of business located at 111 Corporate Boulevard, Suite H, South Plainfield, Middlesex County, New Jersey 07080.  Best Eagle is owned in equal shares by Jeffrey Robbins, Mark Wilson, and Gregory Schutte.  Best Eagle distributes outdoor living products which are offered for sale through major retailers in the United States.

3.      Upon information and belief, Defendant Peaktop International Holdings Limited ("PT Holdings") is a corporation organized under the laws of Bermuda, and has its registered office and/or principal place of business located at Unit 1603-1605, 16F, Tower III, Enterprise Square, 9 Sheung Yuet Road, Kowloon Bay, Kowloon, Hong Kong. Upon information and belief, PT Holdings has conducted business in this State, individually and/or through its subsidiary companies.  PT Holdings manufactures and/or distributes products which are in the stream of commerce in this State.  PT Holdings has committed the wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to conduct business in this State. Therefore, we respectfully submit that PT Holdings is subject to the jurisdiction of this Court.

2

NOV-28-2006 14:52 FROM:BOURNE NOLL KENYON   908 277 6503        TO:Guaranteed Suchkera  P.5 33

4.    Upon information and belief, Defendant Peaktop Investment Holdings Limited

("PT Investment") is a corporation organized under the laws of the British Virgin Islands, and

has its registered office and/or principal place of business located at Unit 1603-1605, 16F, Tower

III, Enterprise Square, 9 Sheung Yuet Road, Kowloon Bay, Kowloon, Hong Kong.  Upon

information and belief, PT Investment is a direct, wholly owned subsidiary of PT Holdings.

Upon information and belief, PT Investment has conducted business in this State, individually

and/or through its subsidiary companies.  PT Investment manufactures and/or distributes

products which are in the stream of commerce in this State.  PT Investment has committed the

wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to

conduct business in this State.  Therefore, we respectfully submit that PT Investment is subject to

the jurisdiction of this Court.

5.    Upon information and belief, Defendant Silk Road Gifts, Inc.(a/k/a or d/b/a Silk

Road Group) ("SRG"), is a corporation organized under the laws of the State of New Jersey, and

has its principal place of business located at 801 Penhorn Avenue, Unit 4, Secaucus, NJ 07094.

Upon information and belief, SRG is a direct, wholly owned subsidiary of PT Investment.  Upon

information and belief, SRG is a resident of and conducts business in this State, manufactures

and/or distributes products which are in the stream of commerce in this State, has committed the

wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to

conduct business in this State.  Therefore, we respectfully submit that SRG is subject to the

jurisdiction of this Court.

6.    Upon information and belief, PT Holdings and PT Investment, together with their

numerous subsidiary companies, including, without limitation, SRG, and their subcontractors

(collectively, the "Peaktop Group"), are engaged in the design and manufacture of home and

3

NOV-28-2006 14:52 FROM:BOURNE NOLL KENYON    908 277 5902    TO:Guaranteed Subpoena    P.6/29

garden decorative products which are offered for sale in markets in Asia, North America and Europe.

7.      Upon information and belief, at all relevant times Defendant Lin Chun Kuei (a.k.a. "C.K. Lin") (hereinafter "Defendant C.K. Lin") has been, and is a resident of the Hong Kong Special Administrative Region of China ("Hong Kong"), of Taiwan, Republic of China ("Taiwan") or of the People's Republic of China ("China"), and is the Chief Executive Officer and Chairman of the Board of Directors of PT Holdings. At all relevant times, Defendant C.K. Lin has transacted business within this State, and has committed the wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to conduct business in this State, and, therefore, we respectfully submit that Defendant C.K. Lin is subject to the jurisdiction of this Court.

8.      Upon information and belief, at all times relevant and material herein, Defendant Wei Hung Lin (a.k.a. "Vincent Lin") (hereinafter "Defendant Vincent Lin") has been a resident of the State of New Jersey, having an address located at 53 Center Street, Englewood Cliffs, New Jersey 07632. At all times relevant and material herein, Defendant Vincent Lin has transacted business within this State, and has committed the wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to conduct business in this State, and, therefore, we respectfully submit that Defendant C.K. Lin is subject to the jurisdiction of this Court.

9.      Upon information and belief, at all relevant times Defendant Li Chien Kuan (a.k.a. "Spencer Lee") (hereinafter, "Defendant Spencer Lee") has been, and is a resident of Hong Kong, of Taiwan, or of China, or of Jakarta, Indonesia, and is an Officer and a Director of PT Holdings and/or PT Investment. At all relevant times, Defendant Spencer Lee has transacted business within this State, and has committed the wrongful acts alleged herein which were and

4

NOV-30-2006 14:52 FROM:BOURNE NOLL KENYON    908 277 6808    TO:guaranteed Subpoena    P.10/36

are intended to impact the Plaintiffs' ability to conduct business in this State, and, therefore, we respectfully submit that Defendant Spencer Lee is subject to the jurisdiction of this Court.

      10.     Upon information and belief, at all relevant times Defendant Tong Chak Wai (a.k.a. "Wilson Tong") (hereinafter. "Defendant Wilson Tong") has been, and is a resident of Hong Kong, of Taiwan, or of China, and is an Officer of PT Holdings and/or PT Investment. At all relevant times, Defendant Wilson Tong has transacted business within this State, and has committed the wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to conduct business in this State, and, therefore, we respectfully submit that Defendant Wilson Tong is subject to the jurisdiction of this Court.

      11.     Although it is not a party to this action, Peaktop Technologies (USA) Hong Kong Limited ("PTTHK") is a company organized under the laws of Hong Kong, and has its registered office and/or principal place of business located at Unit 1603-1605, 16F, Tower III, Enterprise Square, 9 Sheung Yuet Road, Kowloon Bay, Kowloon, Hong Kong. The stock of PTTHK is owned 51% by PT Investment, and 49% by GGP. The Board of Directors of PTTHK consists of two representatives of PT Holdings, Defendant C.K. Lin and Defendant Spencer Lee, and two representatives of GGP, Jeffrey Robbins and Gregory Schutte. Jeffrey Robbins had been, and, despite the wrongful acts of the Defendants herein as detailed below, remains the legitimate President of PTTHK. As set forth in detail below, during the period from December 2003 through August 31, 2006, PTTHK had been engaged in an ongoing business relationship with GGP for the sale and distribution of products in the United States, Mexico, and Canada.

      12.     Although it is not a party to this action, Peaktop Technologies (USA), Inc. ("PTTUSA") is a company organized under the laws of New York, is authorized to do business in the State of New Jersey, and has its principal place of business located at 111 Corporate

5

NOV-08-2006 14:53 FROM:BOURNE NOLL KEN ON    908 377 6809    To:Guarantees Suuccers   P.11 36

Boulevard, Suite H, South Plainfield, Middlesex County, New Jersey 07080. The stock of

PTTUSA is owned 51% by GGP, 19% by PT Investment, and 30% by Big Money, an entity

controlled, upon information and belief, by an individual known as Mike Wu. Jeffrey Robbins is

the President of PTTUSA. As set forth in detail below, during the period from December 2003

through August 31, 2006, PTTUSA had been engaged in an ongoing business relationship with

GGP for the sale and distribution of products in the United States, Mexico, and Canada.

13.    Upon information and belief, Defendant Dick Arnold is an individual who has a

business address in care of Stan Anderson & Associates, 1230 Eagan Industrial Road, Eagan,

Minnesota 55121, and is in the business of providing manufacturers representation services.

Defendant Dick Arnold, as an employee of Defendant Stan Anderson & Associates ("SAA"),

was engaged by GGP as an independent contractor to provide representation services during the

period from in or about April 2005 through September 2006. Upon information and belief,

Defendant Dick Arnold has transacted business within this State, and has committed the

wrongful acts alleged herein which were and are intended to impact the Plaintiffs' ability to

conduct business in this State, and, therefore, we respectfully submit that Defendant Dick Arnold

is subject to the jurisdiction of this Court.

14.    Upon information and belief, Defendant SAA is a corporation or unincorporated

association having its principal place of business located at 1230 Eagan Industrial Road, Eagan,

Minnesota 55121, and is in the business of providing manufacturers representation services.

Upon information and belief, SAA, in conjunction with its employee Defendant Dick Arnold has

transacted business within this State, and has committed the wrongful acts alleged herein which

were and are intended to impact the Plaintiffs' ability to conduct business in this State, and,

therefore, we respectfully submit that Defendant SAA is subject to the jurisdiction of this Court.

NOV-06-2006 14:53 FROM:BOURNE NOLL HEMPON    908 577 6905    To:Guarantees Eurodena   P.18 28

15.    Defendants J. Doe 1-5 are individuals whose names and capacities are not known to plaintiff. Consequently, plaintiff sues these defendants by their fictitious names. Plaintiff will seek leave to amend this Verified Complaint to state the true names and capacities of these fictitiously named defendants if, and when they are ascertained.

16.    Defendants ABC CORP. 1-5 are corporations and/or other business entities whose names and capacities are not known to plaintiff. Consequently, plaintiff sues these defendants by their fictitious names. Plaintiff will seek leave to amend this Verified Complaint to state the true names and capacities of these fictitiously named defendants if, and when they are ascertained.

**Venue**

17.    We respectfully submit that, pursuant to Rule 4:3-2(a), venue is appropriate for this case in Hudson County because one of the principal defendants, SRG, has its registered office and/or principal place of business located in the Town of Secaucus, Hudson County.

**Background Regarding Plaintiffs' Relationships with the Peaktop Group**

18.    Since in or about December 2003, PT Investment, PTTHK, and PTTUSA have been engaged with GGP in a venture for the supply, distribution, marketing, and sale of certain gardening and water gardening products manufactured and/or procured by the Peaktop Group ("Products") to customers, generally retailers, in the United States of America, Mexico, and Canada (the "Territory"). In general terms, PTTHK processes orders for the Products to be delivered "Free On Board" in China to customers which offer the Products for sale in the Territory. In general terms, PTTUSA processes orders for the Products which are shipped to warehouses in the United States for supplemental inventory to address customers' needs for replacement products, warranty claims, and/or to restock stores to meet higher than anticipated demand.

7

NOV-06-2006 14:53 FROM:BOURNE NILL HEN ON   908 277 6308       TO:Guaranteed Supplers  P.10/36

19.     Beginning in 2005, the Hong Kong Stock Exchange sent inquiries to PT Holdings,

a listed company, concerning PT Holdings' "connected transactions" with PTTHK, PTTUSA,

and GeoGlobal. In response to these inquiries, on or about October 24, 2005, the parties entered

into a set of agreements to document their sales and distribution arrangements. Thus, PT

Investment entered into an agreement with PTTUSA entitled "Supply and Distribution

Agreement", and a virtually identical agreement with PTTHK (collectively, "Supply

Agreements"). In turn, PTTUSA entered into an agreement with GeoGlobal entitled "Marketing

Agency Agreement," and PTTHK entered into a virtually identical "Marketing Agency

Agreement" with GeoGlobal (collectively, "Marketing Agreements").

20.     Towards the end of 2005 and into 2006, Defendant C.K. Lin and Jeffrey Robbins

engaged in a number of communications, individually and in conjunction with other members of

their respective organizations, wherein issues regarding water gardening products, among other

things, were discussed extensively. In brief, GGP had been for some time alarmed at, among

other things, the unacceptably high rate of defective water gardening merchandise that the

Peaktop Group was supplying under the parties' agreements. On some of the Peaktop Group

products, particularly water pumps, the failure rate exceeded 25%. Additionally, the Peaktop

Group, through PT Investment, was deeply in arrears in paying GGP the commissions owed on

products that had been shipped to and paid for by customers.

21.     As a result of the above-referenced communications, including several meetings,

the parties agreed that all would be best served if the Peaktop Group and GGP worked towards

separating their businesses from each other. Among other things, the parties agreed that for the

2007 gardening and water gardening season, GGP would take over the manufacture, marketing,

and sales for water gardening products, and the Peaktop Group would continue to manufacture

8

NO. -08-2006 14:54 FROM:SOUPHE NOLL KENYON    908 1 7 6803    T:Guaranteed Suttcera  P.14 36

gardening products, continuing to use GGP as its marketing agent in the Territory.

22.    With these agreements in mind, the parties negotiated documents which extended the expiration dates of the Supply Agreements and the Marketing Agreements from July 31, 2006, through August 31, 2006. Those documents consisted of a set of four Supplemental Deed agreements which corresponded to the two Supply Agreements and the two Marketing Agreements, and were entered into as of July 28. 2006 ("Supplemental Deeds").

23.    In addition to extending the term as to each of the underlying agreements, the Supplemental Deeds expressly provided that the definition of the Products no longer included "water gardening products."

24.    The Supplemental Deed by which the PTTHK Marketing Agreement was extended was expressly approved by the Board of Directors of PTTHK, by way of a document entitled "Minutes of a Meeting of the Board of Directors of Peaktop Technologies (USA) Hong Kong Limited (The 'Company') Held on 28 July 2006" (hereinafter, the "PTTHK Meeting Minutes").

25.    The Supplemental Deed by which the PTTUSA Marketing Agreement was extended was expressly approved by the Board of Directors of PTTUSA, by way of a document entitled "Minutes of a Meeting of the Board of Directors of Peaktop Technologies (USA) Hong Kong Limited (The 'Company') Held on 28 July 2006" (hereinafter, the "PTTUSA Meeting Minutes").

26.    Both the PTTHK Meeting Minutes and the PTTUSA Meeting Minutes expressly acknowledged that GGP was permitted to engage in the sale of water gardening products. To this end, the PTTHK Meeting Minutes, for example, contains the following language:

(A)    The Directors declared their interests (if any) in the

9

NOV-28-2006 14:54 FROM:BOURNE NOLL MENKON   908 277 6507         TO:Guaranteed Subpoena   P.15/36

matters to be considered at the meeting. In
particular, it was declared by Mr. Lin Chun Kuei
and Mr. Li Chien Kuan, Spencer that they were also
directors (and in the case of Mr. Lin Chun Kuei, an
indirect shareholder) of Peaktop Investment
Holdings (B.V.I.) Limited, the counterparty in the
Supply Agreement Supplemental Deed (as defined
below) and it was declared by Mr. Jeffrey Thomas
Robbins and Mr. Gregory George Schutte' that they
were also directors and shareholders (as to one third
each) of Geoglobal Partners LLC, the counterparty
in the Marketing Agreement Supplemental Deed (as
defined below).

(B)     The Directors acknowledge and agree that Mr.
        Jeffrey Thomas Robbins and Mr. Gregory George
        Schutte', under the express terms of the Supply
        Agreement Supplemental Deed (as defined below)
        and the Marketing Agreement Supplemental Deed
        (as defined below), individually and in their
        capacity as members of GeoGlobal Partners LLC,
        shall be permitted to engage in making sales for
        their own and/or for GeoGlobal Partners LLC's
        accounts of goods and/or services pertaining to
        water gardening to customers in the Territory and
        worldwide.

27.     In its Circular regarding "Continuing Connected Transactions" published on

behalf of PT Holdings dated 26 September 2006, PT Holdings confirmed that the Supplemental

Deed extending the PTTHK Supply Agreement was approved by the Independent Shareholders

of PT Holdings' "at a special general meeting of [PT Holdings] held on 30 August 2006.

28.     Once the Supplemental Deeds were executed, the parties began in August, 2006,

to negotiate a set of four agreements that would have continued the parties' "connected

transactions" through July of 2007. Negotiations regarding those proposed agreements ceased

after Defendant C.K. Lin sent a letter, described below, to all customers of GGP and Best Eagle

by which he caused severe damage to the relationships which GGP and Best Eagle enjoyed with

NO +26-2006 14:54 FROM:BOUPNE NCLL HEN UW    206 277 2005    TO:Guaranteed Scoreena  P.14 35

their customers.

**The September 14, 2006 Letter**

29.    On or about September 14, 2006, Defendant C.K. Lin sent a letter to all of the customers of GGP and Best Eagle (the "September 14 Letter"), in which Defendant C.K. Lin identified himself as "Chairman and CEO" of PT Holdings, and stated that "effective immediately" PTTHK and SRG would "assume all sales and support responsibilities" for PT Holdings.

30.    The clear and specific intent of the September 14 Letter was to interfere with the customer relationships and goodwill that GGP and Best Eagle had developed for the sale of its own products and services in the marketplace, separate and apart from the goodwill that GGP had developed for the benefit of the Peaktop Group through GGP's diligent efforts since 2003.

**Defendants' Wrongful Acts In Addition To The September 14 Letter**

31.    Since receiving the September 14 Letter, it has come to the Plaintiffs' attention that the Defendants herein have engaged in a number of additional wrongful acts, as detailed below, which have as their intended purpose to interfere with the Plaintiffs' present contracts and prospective economic interests, and otherwise to damage Plaintiffs' goodwill, reputation, and ability effectively to conduct business in this State, and worldwide.

## COUNT ONE
### (Tortious Interference With Contract and Business Relations)

1.    Plaintiffs repeat each and every allegation contained in the preceding paragraphs of this Verified Complaint as if the same were set forth at length herein.

2.    Defendant C.K. Lin's September 14 Letter demonstrates that Defendants PT Holdings and C.K. Lin knew of the existence of the existing contracts and business relationships

NOV-28-2006 14:54 FROM:BOURNE HILL NEW YK   609 27 5508         To:Guaranteed Superiera P.17/36

between the Plaintiffs and their customers, and intends to deprive GGP and Best Eagle of their expected benefit of those existing contracts and business relationships.

## Defendants Dick Arnold and SAA

3.      In addition to the above-described wrongful conduct. Defendant SRG and/or Defendant Vincent Lin, upon information and belief, engaged Defendants Defendant Dick Arnold and the company by which Mr. Arnold is employed, Defendant SAA, to provide representation services for SRG in order to divert business from GGP and/or Best Eagle.

4.      As noted above, Defendant Dick Arnold and SAA had previously been engaged by GGP as an independent contractor to provide representation services during the period immediately prior to their engagement with SRG.

5.      Upon information and belief, Defendant Dick Arnold and SAA terminated their engagement with GGP for the express purpose of misappropriating valuable, confidential, and proprietary information about the business of GGP and/or Best Eagle, including information about the customers and existing contracts of GGP and/or Best Eagle, in order wrongfully to benefit SRG and its co-defendants herein.

6.      Upon information and belief, the Defendants have used, and expect in the future to continue to use the information which they have wrongfully acquired about GGP and/or Best Eagle through Defendant Dick Arnold and/or SAA in order wrongfully to interfere with the existing contracts and business relations of GGP and/or Best Eagle.

## Malicious False Claims

7.      In addition to the above-described wrongful conduct, upon information and belief, the Defendants, particularly Defendant C.K. Lin and Defendant Spencer Lee, have been communicating with customers of GGP and Best Eagle alleging that the products designed and

NOV-08-2006 14:55 FROM:BOURNE NOLL KEN CH   908 277 6304      TO:Guaranteed Subspera  P.15/36

manufactured by and on behalf of GGP and Best Eagle infringe on certain unspecified copyrights

and patents allegedly held by an unidentified entity, but presumably one of the Peaktop

companies.

8.      In connection with their unsubstantiated, false allegations, the above-described

Defendants have threatened that their legal action will result in goods manufactured for GGP and

Best Eagle being impounded, and, therefore, not available for distribution in time for the 2007

season.

9.      Despite their pernicious allegations, the Defendants have failed to produce to

GGP and/or Best Eagle, or, upon information and belief, to any customer, any specific

information about the intellectual property which the Defendants claim, falsely, that GGP and/or

Best Eagle have misappropriated.

10.     By contrast, in response to the Defendants' shadowy allegations and insinuations,

the Plaintiffs have obtained opinions from patent counsel in both the United States and in China

to the effect that under no circumstances do the pumps which GGP and Best Eagle have designed

infringe in any way on any patents or design patents of the Peaktop entities. Moreover, patent

counsel in the United States has opined that the types of designs at issue are in the public

domain, and, therefore, cannot support a claim for patent infringement in any case.

11.     Moreover, copyright searches conducted on behalf of the Plaintiffs yield no

copyrights held by any of the Peaktop companies pertaining to the products of GGP and Best

Eagle.

12.     Yet, despite these unassailable facts and opinions, the Peaktop defendants,

particularly, upon information and belief, Defendant C K  Lin and Defendant Spencer Lee, have

continued aggressively to propagate insidious rumors and false claims designed to destroy the

NOV-06-2006 14:55 FROM:BOURNE NOLL KEN OW.     908 277 6508     Tl'bushan teeb Subscere   P.15/36

Plaintiffs' reputation in the marketplace, and, most immediately, to interfere with the contracts and purchase orders which GGP and Best Eagle had obtained for the 2007 season

13.    By their conduct as described herein, Defendants have interfered, and continue to interfere with Plaintiffs' contracts for the 2007 season that existed at the time of Defendants' wrongful conduct.

14.    By their conduct as described herein, Defendants have interfered with Plaintiffs' business relations that existed at the time of Defendants' wrongful conduct.

15.    Defendants interference, as more particularly described above, was wrongful, and malicious in that Defendants have intentionally inflicted harm upon the Plaintiffs without justification or excuse.

16.    As a direct and proximate result of Defendants' tortious interference with Plaintiffs' business relations, Plaintiffs have already lost valuable purchase orders from at least one of the Plaintiffs' substantial customers.

17.    As a direct and proximate result of Defendants tortious interference with Plaintiffs' contracts and/or existing business relations, the Plaintiffs have suffered damages in amounts yet to be determined.

18.    Upon information and belief, as a direct and proximate result of Defendants' tortious interference with Plaintiffs' business relationships, Plaintiffs are in immediate danger of losing significant additional purchase orders from Plaintiffs' customers, including valuable contracts for the 2007 season for the sale of water gardening products.  Loss of those purchase orders and/or contracts would cause Plaintiffs' irreparable injury for which monetary damages will not provide an adequate remedy.

14

NO. -06-2006  14:55  FROM:BOURNE NOLL KENYON   908 277 6909         TO:Guaranteed Subpoena   P.20 36

## COUNT TWO
### (Tortious Interference with Prospective Economic Advantages)

1.      Plaintiffs repeat each and every allegation of the preceding Counts of this Verified Complaint as if the same were set forth at length herein.

2.      Plaintiffs have reasonably expected that their business relationships with their customers would continue as they have for years prior, with the result that Plaintiffs would earn profits from their marketing, sales, and service of a variety of products in the months and years to come.

3.      By their conduct as described herein, Defendants have interfered with Plaintiffs' business relationships with their customers, and so directly and proximately have caused or contributed to the possibility that Plaintiffs may lose those customers, and the prospective economic advantages flowing from those customers.

4.      Upon information and belief, as a direct and proximate result of Defendants' tortious interference, Plaintiffs are in immediate danger of losing business from one or more of their substantial customers, including valuable contracts for the 2007 season for the sale of water gardening products.

5.      Upon information and belief, Defendants interference, both past and continuing, as more particularly described above, has been and is wrongful, and malicious in that Defendants have intentionally inflicted harm and continue to inflict harm upon the Plaintiffs without justification or excuse.

## COUNT THREE
### (Unfair Competition)

1.      Plaintiffs repeat each and every allegation of the preceding Counts of this Verified

NOV-28-2006 14:55 FROM:BOURNE NOLL NEW OR   908 277 6805    TO:Guaranteed Suppoers  P.21 38

Complaint as if the same were set forth at length herein.

2.      By their conduct as described herein, Defendants have acted to injure Plaintiffs' business, and to seek unfair advantages in competing with Plaintiffs.

3.      By their conduct as described above, Defendants have thus engaged in unfair competition.

4.      As a result of Defendants' unfair competition, the Plaintiffs have already suffered irreparable harm, and will continue to suffer irreparable harm as set forth more particularly above.

5.      As a result of Defendants' unfair competition, the Plaintiffs have already incurred damages, and will continue to incur damages in amounts yet to be determined.

## COUNT FOUR
### (Defamation - Trade Disparagement)

1.      Plaintiffs repeat each and every allegation of the preceding Counts of this Verified Complaint as if the same were set forth at length herein.

2.      As described more particularly below, Defendant C.K. Lin, individually and in his capacity as Chairman of the Board and Chief Executive Officer of PT Holdings, published in his September 14 Letter the following false, deceptive, and misleading statements of fact which are unmistakably intended to cause damage GGP and Best Eagle:

        (a)     that PTTHK is "owned and managed" by PT Holdings;

        (b)     that "Mr. Jeff Robbins no longer serves as the President of [PTTHK]";

        (c)     that Jeffrey Robbins "does not represent [PT Holdings] and [PTTHK]";

        (d)     that GGP and Best Eagle "might be attempting to cancel or to divert your

16

NOV-06-2006 14:56 FROM:BOURNE NOLL KENYON   908 277 6808   TO:Guaranteed Subscene   P.22/36

purchase orders";

    (e)    that GGP and Best Eagle "may be attempting to market Peaktop's

copyrighted and patented designs and technologies under their own

names"; and

    (f)    that "Mr. C.F. Lin" is "the newly appointed President" of PTTHK.

3.    The false statements published by Defendant C.K. Lin in the September 14 Letter

tend adversely to affect the Plaintiffs' reputation generally. As such, these statements are

defamatory.

4.    The false statements published by Defendant C.K. Lin in the September 14 Letter

tend adversely to affect the Plaintiffs' reputation in his trade or business. As such, these

statements are defamatory per se.

5.    The false statements published by Defendant C.K. Lin constitute trade libel, trade

disparagement, and defamation.

6.    Defendant C.K. Lin knowingly and intentionally published these false statements

without any justifiable basis.

7.    Upon information and belief, Defendant C.K. Lin published these false statements

wilfully and maliciously.

8.    As a direct and proximate result of Defendant C.K. Lin's defamatory statements,

the Plaintiffs have been damaged in amounts yet to be determined.

## COUNT FIVE
### (Violation of the Lanham Act)

1.    Plaintiffs repeat each and every allegation of the preceding Counts of this Verified

Complaint as if the same were set forth at length herein.

NOV-28-2006 14:56 FROM:BOURNE NOLL KENYON    908 377 6805    TO:Guaranteed Subpoena    P.23/36

alia, any "false or misleading description of fact, or false misleading representation of fact which

. . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or]

qualities . . . of . . . goods, services, or commercial activities."

3.      The marketing campaign engaged in by Defendants PT Holdings, SRG, C.K Lin,

Spencer Lee, and Vincent Lin, demonstrated specifically by the September 14 Letter, makes a

series of false and misleading claims, as identified more specifically above.

4.      These false and misleading claims have deceived, and will continue to deceive, a

substantial portion of the Plaintiffs' current customers and target audience for their products.

The false and misleading claims have appeared in commercial advertising or promotion,

including, but not limited to, the September 14 Letter which, upon information and belief, was

sent to all of the Plaintiffs customers, prospective customers and contacts, and, therefore,

involves interstate commerce.

5.      The false and misleading advertisements and statements

     (a)      about the Plaintiffs' right to market and sell the Peaktop Group's;

     (b)      about the alleged removal of Jeffrey Robbins as the President of PTTHK;

     (c)      about the Plaintiffs' alleged attempts to cancel or divert customers'
            purchase orders;

     (d)      about the Plaintiffs' alleged attempts "to market Peaktop's copyrighted
            and patented designs and technologies under their own names"

are material to consumers' purchasing decisions.

6.      As a result of the intentional, deliberate, and willful actions of Defendants PT

Holdings, SRG, C.K. Lin, Spencer Lee, and Vincent Lin, the Plaintiffs and the public have been injured, and unless Defendants PT Holdings, SRG, C.K. Lin, and Vincent Lin are enjoined by this Court and ordered to retract and correct their false and misleading advertisements and statements, these statements will continue to cause the Plaintiffs to suffer a loss of consumer confidence, sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be, irreparable. The exact nature and extent of the Plaintiffs' injuries cannot be ascertained at this time, but, we respectfully submit that there is no adequate remedy at law.

## COUNT SIX
### (Breach of Contract)

1.     Plaintiffs repeat each and every allegation of the preceding Counts of this Verified Complaint as if the same were set forth at length herein.

2.     As described more particularly above, GGP had reached an agreement with the Peaktop Group, and more specifically, with PT Investment, PTTHK, and PTTUSA, to the effect that GGP would take over the manufacture, marketing, and sales for water gardening products for the 2007 gardening and water gardening season, and that the Peaktop Group would continue to manufacture, supply, and distribute gardening products, using GGP as its marketing agent in the Territory.

3.     This agreement was memorialized in written communications among the parties, including certain minutes of meetings among the parties.

4.     This agreement was further memorialized in the Supplemental Deeds.

5.     This agreement was further memorialized in both the PTTHK Meeting Minutes and the PTTUSA Meeting Minutes.

19

NOV-08-2006 14:56 FROM:BOURNE NOLL KENYON    908 277 6808    TO:Guaranteed Subpoena    P.25 38

6.    This agreement was further memorialized at a special general meeting of the independent shareholders of PT Holdings.

7.    The Defendants have breached this agreement through their efforts to retain water gardening business for the 2007 season for their own accounts.

8.    The Defendants have further breached this agreement by attempting to replace GGP with SRG to place and manage all orders on behalf of PTTHK and PT Holdings for the 2007 season.

9.    The Plaintiffs expected to earn substantial profits from the manufacture and sale of water gardening products for the 2007 season, and for future seasons.

10.    GGP expected to earn substantial profits from the commissions to be paid on orders for the other gardening products business that GGP had obtained for PTTHK and PTTUSA through GGP's efforts as marketing agent for PTTHK and PTTUSA.

11.    As a direct and proximate result of the Defendants' breaches of their agreement with GGP, the Plaintiffs have incurred, and will continue to incur damages in amounts yet to be determined but which likely will exceed Four Million ($4,000,000 USD) Dollars.

## COUNT SEVEN
### (Breach of Contract - Detrimental Reliance)

1.    Plaintiffs repeat each and every allegation of the preceding Counts of this Verified Complaint as if the same were set forth at length herein.

2.    GGP has relied to its detriment upon its express agreement with the PT Investment, PTTHK and PTTUSA to the effect GGP would take over the manufacture, marketing, and sales for water gardening products for the 2007 gardening and water gardening season, and that the Peaktop Group would continue to manufacture, supply, and distribute

20

NOV-26-2006 14:57 FROM:BOURNE NOLL NEW JR   908 277 5508        T:Guaranteed Stoppera  P.26 36

gardening products, using GGP as its marketing agent in the Territory.

3.      In reliance upon the above-described agreement, GGP and Best Eagle have invested substantial sums of money, allocated substantial resources, and incurred substantial obligations in preparing to manufacture, supply, and distribute water gardening products.

4.      In reliance upon the above-described agreement. GGP has continued to invest substantial sums of money, allocated substantial resources, and incurred substantial obligations in order to continue to provide marketing, sales, and service for the gardening products which GGP reasonably anticipated to handle in cooperation with PT Investment, PTTHK, and PTTUSA for the 2007 season.

5.      The Defendants have breached their agreement with GGP through the Defendants' efforts to retain water gardening business for the 2007 season for their own accounts.

6.      The Defendants have further breached their agreement with GGP by attempting to replace GGP with SRG to place and manage all orders on behalf of PTTHK and PT Holdings for the 2007 season.

7.      GGP is entitled to compensation for all damages in connection with GGP's detrimental reliance upon its agreement with the Defendants, which agreement the Defendants have breached.

## COUNT EIGHT
### (Breach of the Covenant of Good Faith and Fair Dealing)

1.      Plaintiffs repeat each and every allegation of the preceding Counts of this Verified Complaint as if the same were set forth at length herein

2.      Defendants' conduct as described herein had the effect of destroying GGP's rights to receive the intended benefits of its agreement with the Defendants concerning the 2007 season,

21

NOV-06-2006 14:57 FROM:BOURNE NOLL KENYON    909 877 6909    TO:Guarantees Success    P.27 36

and continuing into the future.  Consequently, Defendants violated the covenant of good faith
and fair dealing that is implied in contracts such as the agreement at issue.

    3.     As a direct and proximate result of Defendants' breach of the covenant of good
faith and fair dealing, Plaintiffs have incurred damages in amounts yet to be determined, but
which likely will exceed Four Million ($4,000,000 USD) Dollars.

### COUNT NINE
**(Breach of Contract - Damages Sustained By Third Party Beneficiary)**

    1.     Plaintiffs repeat each and every allegation of the preceding Counts of this Verified
Complaint as if the same were set forth at length herein.

    2.     GGP's Marketing Agreements with PTTHK and PTTUSA are expressly
conditioned upon, and connected with the corresponding Supply Agreements which PTTHK and
PTTUSA entered into simultaneously with PT Investment.  GGP is thus the expected third party
beneficiary of the Supply Agreements.

    3.     Under GGP's Marketing Agreements with PTTHK and PTTUSA, GGP expected
that, in consideration of its performance of certain obligations on behalf of PTTHK and
PTTUSA, GGP would receive a specified percentage of the gross profit on the Products
manufactured by the Peaktop Group and distributed through PTTHK and/or PTTUSA in the
Territory.

    4.     Under the same Marketing Agreements, GGP expected that, in consideration of its
performance of certain obligations on behalf of PTTHK and PTTUSA, GGP would receive a
specified percentage of the gross profits on the Products procured from third parties by the
Peaktop Group and distributed through PTTHK and/or PTTUSA in the Territory.

    5.     The ability of PTTHK to distribute accurately and fairly the percentage of gross

22

NOV-26-2006 14:57 FROM:BOURNE NOLL KENYON   909 377 6604           TO:Guaranteed Surecera  P.26 36

profits due to GGP depended upon PTTHK accurately and fairly accounting those profits, without interference from PT Investment.

6.    Contrary to the express and unequivocal terms of the parties' agreements, and even the most basic rules of inter-company governance, PT Investment has repeatedly and routinely failed and refused to treat PTTHK as a separate company, and to account at arms length with PTTHK pursuant to PT Investment's Supply Agreement with PTTHK.

7.    Upon information and belief, Defendant Wilson Tong serves not only as Chief Financial Officer and Company Secretary for PT Holdings and/or PT Investment, but also as Secretary and, upon information and belief, Chief Financial Officer for PTTHK.

8.    Upon information and belief, PT Investment, by and through the actions of Defendant Wilson Tong, has repeatedly and routinely reached directly into PTTHK's accounts to draw out substantial payments received from customers immediately upon PTTHK's receipt of those payments, and without accounting or even attempting to account those payments in accordance with the Supply Agreements. Thereafter, PT Investment has repeatedly and routinely restored to PTTHK only such monies as PT Investment has chosen unilaterally to restore, without regard to what amounts are actually due to PTTHK, and, derivatively, to GGP pursuant to the parties' interconnected agreements. Such conduct by PT Investment and Defendant Wilson Tong constitutes a direct and material breach of PTTHK's Supply Agreement with PT Investment, with the resulting damage flowing through PTTHK directly to GGP as the third-party beneficiary of the Supply Agreement.

9.    By way of example, among other things, PT Investment, and its related companies, have consistently failed and refused to split the costs for defective products in accordance with the parties' agreements. Thus, instead of absorbing some fair portion of the

amounts that the customers deduct from proceeds of sale for defective products. PT Investment

has from time to time deducted the entire amount paid for defective products from the gross

profits of sale, thus creating a substantial debt owed by PT Investment to PTTHK and PTTUSA,

and, consequently, to GGP, for defective product deductions.

10.     GGP has made repeated demands to PT Investment, PT Holdings, and Defendant

Wilson Tong to rectify PT Investment's repeated breaches of its obligations to PTTHK and,

derivatively, to GGP under the parties' agreements, but neither PT Investment, nor PT Holdings,

nor Defendant Wilson Tong have taken appropriate action to cure their material breaches of the

parties' agreements.

11.     As a direct and proximate result of this wrongful conduct described above, GGP

has incurred damages in amounts yet to be determined, but which will likely exceed Four Million

($4,000,000 USD) Dollars.

### COUNT TEN
### (Unjust Enrichment)

1.     Plaintiffs repeat each and every allegation of the preceding Counts of this Verified

Complaint as if the same were set forth at length herein.

2.     As a direct and proximate result of the wrongful conduct described above, the

Defendants have been unjustly enriched at the Plaintiffs' expense, and the Plaintiffs have

incurred damages in amounts yet to be determined.

### COUNT ELEVEN
### (New Jersey Racketeer Influenced and Corrupt Organizations Act)

1.     Plaintiffs repeat each and every allegation of the preceding Counts of this Verified

Complaint as if the same were set forth at length herein.

NOV-28-2006 14:58 FROM:BOURNE NOLL NEW JR.     908 277 6465     TO:Guarantees Suadzeno     P.30 38

2.      At all relevant times, the Plaintiffs were entities capable of holding, and in fact holding, a legal and/or beneficial interest in property.

3.      At all relevant times, Defendants C.K. Lin and Spencer Lee were individuals capable of holding, and in fact holding, a legal and/or beneficial interest in property.

4.      At all relevant times, Defendant PT Holdings was an enterprise engaged, and the activities of which affected, trade and commerce. and in particular, affected interstate or foreign commerce.

5.      For the purposes of this Count only, the term "defendants" shall refer only to Defendants C.K. Lin and Spencer Lee.

6.      At all relevant times, Defendants were associated with PT Holdings.

7.      Defendants received income derived, directly or indirectly, from the pattern of racketeering activity described below.  Defendants used or invested this income, or the proceeds of this income, in the operation of PT Holdings, in violation of N.J.S.A. 2C:41-2(a).

8.      Defendants have conducted or participated, directly or indirectly, in the conduct of PT Holdings' affairs through the pattern of racketeering activity described below, in violation of N.J.S.A. 2C:41-2(c).

9.      Defendants have knowingly conspired to do each of those acts set forth in paragraphs 8 and 9 of this Count, and thereby have conspired to violate N.J.S.A. 2C:41-2(a) and (c), in violation of N.J.S.A. 2C:41-2(d).

10.     In particular, between September 4, 2006, and November 1, 2006, the Defendants agreed and conspired to commit acts of criminal conduct (including, but not limited to, the pattern of racketeering activity described below), with the knowledge that this criminal conduct

25

NOV-28-2006  14:58 FROM:BOURNE NOLL KENYON    908 277 6802        TO:Guaranteed Subpoena  P.31/36

~~that part of a pattern of racketeering activity, for the purpose of cheating, defrauding, stealing,~~

and extorting from the Plaintiffs in violation of N.J.S.A. 2C:41-2.

11.    The Defendants' pattern of racketeering conduct consists of, without limitation, at

least the following acts:

(a)    On or about September 4, 2006, at a trade show held in Cologne,

Germany, in a meeting with three of the officers of both GGP and Best

Eagle, namely, Mark Wilson, Gregory Schutte, and Lydia Schutte,

Defendant C.K. Lin made extortionist threats to the effect that if GGP did

not sign the contracts then under negotiation in the form prescribed by PT

Holdings and/or PT Investment, then he and his associates would make it

impossible for GGP, Best Eagle, and the individual members and

shareholders thereof to do business in China ever again.  In connection

with these threats, Defendant C.K. Lin made statements to the effect that

he and his associates had many connections in China, and that GGP, Best

Eagle, and the individual members and shareholders thereof would be very

sorry, and that it would be dangerous for them if they did not comply with

the demands of Defendant C.K. Lin and his associates.

(b)    Upon information and belief, on or about September 25, 2006, Defendant

C.K. Lin, acting individually and/or in association with Shenzhen

Yuansheng Light Industrial Products Co., Limited and/or in association

with PT Holdings, provided to and/or caused to be filed with the

Economic Investigation Unit, Police Department, Shenzhen City, China,

certain allegations by which he and/or they accused GGP, Best Eagle, the

26

members and shareholders thereof, and two additional persons associated therewith, of an offense or offences under Chinese law, and/or caused charges of an offense or offenses to be instituted against GGP, Best Eagle, and persons associated therewith.

(c)    On or about October 30, 2006, individuals who identified themselves as being employed by or representatives of the Public Security Bureau of Shenzhen ("Shenzhen PSB") appeared at GGP's office in ZhongShan, China, and made inquiries of one of GGP's employees in that office about accusations lodged by "Peaktop" against certain employees of GGP. The alleged representatives of the Shenzhen PSB then demanded to be taken to the factory responsible for manufacturing goods on behalf of GGP and/or Best Eagle. Upon information and belief, when the alleged representatives of the Shenzhen PSB visited the factory, they made statements to the effect that no case was yet on file with the Shenzhen PSB. Upon information and belief, the alleged representatives of the Shenzhen PSB were transported to GGP's office in ZhongShan, and thereafter to the factory in a vehicle owned and/or operated by or on behalf of PT Holdings, and by a driver employed by and/or on behalf of PT Holdings.

12.    Upon information and belief, the conduct described above constitutes extortion and/or bribery committed by and/or on behalf of one or more of the Defendants.

13.    Upon information and belief, the conduct described above was ordered, managed, and/or controlled by Defendants C.K. Lin and Spencer Lee.

14.    As a direct and proximate result of Defendants' violation of N.J.S.A. 2C:41-2,

NOV-08-2006 14:59 FROM:BOURNE NOLL KENTON  908 277 6808        TO:Guaranteed Storgera  P.23 28

Plaintiffs have sustained substantial injuries to their businesses and their property.

WHEREFORE, the Plaintiffs, GeoGlobal Partners, LLC and Best Eagle Group Limited, demand judgment against Defendants Peaktop International Holdings Limited, Peaktop Investment Holdings Limited, Silk Road Gifts, Inc. (a.k.a. "Silk Road Group"); Lin Chun Kuei (A.k.a. "C.K. Lin"), Lin Wei Hung (a.k.a. "Vincent Lin"), Dick Arnold, and Stan Anderson & Associates as follows:

(a)    Enjoining and restraining the Defendants from disclosing, making use of, or otherwise disseminating any of plaintiffs' trade secrets, including, without limitation, confidential customer information and/or confidential development information; and further requiring an accounting of all such disclosures, uses, and disseminations of plaintiffs' trade secrets and property.

(a)    Enjoining and restraining Defendants from diverting customers who currently have contracts, purchase orders, and business relationships with Plaintiffs away from Plaintiffs, and inducing those customers to enter into contracts, purchase orders, or business relationships with Defendants;

(b)    Enjoining and restraining Defendants from inducing customers who currently have contracts, purchase orders, and business relationship with Plaintiffs to terminate those contracts, purchase orders, and business relationships in order to enter into contracts, purchase orders, or business relationships with third parties;

(c)    Compelling Defendants to return to Plaintiffs all of Plaintiffs' confidential customer information and other confidential business information,

including, without limitation, all information pertaining to Plaintiffs'

product research and development, including all copies of such

information in the possession, custody, or control of the Defendants or any

one of them;

(d)     Compelling Defendants to account for all transactions unjustly obtained

and/or retained by Defendants;

(e)     Compelling Defendants to make available for inspection by the Plaintiffs,

and/or their designated attorneys, accountants, or other representatives, on

an expedited basis, all books and records for the period from December 1,

2003, through the present, pertaining to the following companies:

   (1)     PT Holdings;

   (2)     PT Investment;

   (3)     Peaktop Limited;

   (4)     PTTHK; and

   (5)     All subsidiary companies of PT Holdings and/or PT Investment

           which were related in any way to the transactions among the

           Peaktop Group, PTTHK, PTTUSA, and/or GGP;

(f)     Imposing a constructive trust for the benefit of Plaintiffs on all

transactions unjustly obtained and/or retained by Defendants;

(g)     Awarding compensatory damages;

(h)     Awarding incidental damages;

(i)     Awarding consequential damages;

29

NOV-08-2006 14:59 FROM:BOURNE NOLL KEN JR   909 277 0909        TO:Guaranteed Subpoena   P.25 36

(j)     Awarding punitive damages;

(k)     Awarding attorneys' fees, interests, and costs of suit; and

(l)     Awarding such other and further relief as this Court may deem just and
proper.

## DESIGNATION OF TRIAL COUNSEL

Please take notice, pursuant to Rule 4:25-4, Brian T. Flanagan, Esq., is hereby designated
as trial counsel.

BOURNE NOLL & KENYON, P.A.

Dated: November 6, 2006            By: _____
Brian T. Flanagan, Esq.
Attorneys for Plaintiffs, GeoGlobal Partners,
LLC. and Best Eagle Group Limited

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify, to the best of my knowledge, that I am aware of the following actions
pertaining in part to the matters at issue which are pending in other courts:

1.     A Writ of Summons and Indorsement of Claim, which, upon information and
belief, has been filed on behalf of Peaktop Investment Holdings (BVI) Limited and Peaktop
Technologies (USA) Hong Kong Limited against Jeffrey Thomas Robbins, Mark Wilson,
Gregory George Schutte, GeoGlobal Partners, LLC, Peaktop Technologies (USA), Inc., and Best
Eagle Group Ltd., which action is pending in the High Court of the Hong Kong Special
Administrative Region, Court of First Instance, bearing Action Number 2147 of 2006, and
appears to have been filed on or about September 27, 2006;

2.     A Complaint filed on behalf of Peaktop Investment Holdings (BVI) Limited

30

NOV-26-2006 14:59 FROM:BOURNE NOLL KENYON    908 277 6306         TO:Guaranteed Subpoena   P.36 36

against GeoGlobal Partners, LLC, Jeffrey Thomas Robbins, Mark Wilson, Gregory George

Schutte, Peaktop Technologies (USA), Inc., and Best Eagle Group Ltd., which action is pending

before the United States District Court for the District of New Jersey, bearing Civil Action

Number 06-4632, and appears to have been filed on or about September 25, 2006; and

      3.     A Verified Derivative Shareholder Complaint which has been filed on behalf of

GeoGlobal Partners, LLC, as a Shareholder of Peaktop Technologies (USA), Inc, against Peaktop

International Holdings Limited, SRG Group (a/k/a or d/b/a/ SRG Gifts), Mr. Chun Kuei Lin, Mr.

Vincent Wei Hung Lin, Mr. Mike Wu, and Mr. Chun-Hui Huang, which action is pending before

the United States District Court for the Southern District of New York, bearing Civil Action

Number 06cv8228, and was filed on October 9, 2006.

      I further certify that additional action is contemplated by the parties' plaintiff herein based

upon the progress of the action that is presently pending in Hong Kong, and the potential that one

or more of the defendants in the above-captioned action may have already taken or may in the

future take further action in China.

      Except as so stated, I certify that the matters in controversy are not the subject of any

other action pending in any court or arbitration proceeding, and that no such action or arbitration

is contemplated by this party. I am currently aware of no other parties who should be joined in

this action.

                                    BOURNE NOLL & KENYON, P.A.

Dated: November 6, 2006                By:

                                    Brian T. Flanagan, Esq.
                                  Attorneys for Plaintiffs, GeoGlobal Partners,
                                  LLC, and Best Eagle Group Limited